**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

| | | |
|---|---|---|
| Wild Virginia, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 3:25-cv-01043 |
| | ) | |
| United States Environmental Protection | ) | |
| Agency, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PURSUANT TO RULE 12(b)(1) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to the Court's April 21, 2026 Order (Doc. No. 21), Defendants (collectively

"EPA") hereby move to dismiss the Complaint (Doc. No. 1) in this matter pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure.

## I.      <u>INTRODUCTION</u>

Under the Clean Water Act ("CWA"), each state periodically must submit to the EPA

for approval or disapproval a list, commonly known as the state's "303(d) list," of waterbodies

in the state that are not meeting applicable water quality standards. *See* 33 U.S.C. § 1313(d).

This list identifies the pollutants causing or expected to cause violation of the applicable water

quality standards for impaired waterbodies, thereby identifying "waterbody-pollutant

combinations." *See* 40 C.F.R. § 130.7(b)(4). Count I of the Complaint invokes the CWA's

citizen suit provision (33 U.S.C. § 1365) and asserts that, when the EPA notified Virginia that

it was not taking action "at this time" with regard to certain waters Plaintiff alleges are

impaired by per-and polyfluoroalkyl substances (PFAS), the EPA failed to perform a "non-discretionary" or "mandatory" duty to "disapprove" Virginia's 2024 303(d) list. Compl. ¶ 70. But even accepting the allegations in the Complaint as true for purposes of this motion, the CWA as a matter of law does not impose a non-discretionary duty on the EPA to disapprove Virginia's 2024 303(d) list. Count II fares no better. In Count II, Plaintiff changes tune, asserts (without factual support) that the EPA took final action and approved the omission of those waterbody-pollutant combinations from Virginia's 2024 list, and then purports to challenge that alleged action under the Administrative Procedure Act ("APA"). Compl. ¶¶ 80-81.[1]  The Complaint, however, pleads no facts that support the Complaint's bare legal assertion that EPA took a final action with respect to those waterbody-pollutant combinations. To the contrary, the factual allegations pleaded in the Complaint, taken as true, portray the opposite. Absent a final agency action, Plaintiff's APA claim lacks the necessary jurisdictional prerequisite and must fail.

## II.  BACKGROUND

### A.      The Clean Water Act

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the Act prohibits the discharge of any pollutant into waters of the United States unless that discharge complies with the Act's requirements. *See id.* §§ 1311(a), 1362(12). Those requirements include water quality standards, which "define[] the water quality goals of a water body, or portion thereof,

---

[1] The term "PFAS" refers to per- and polyfluoroalkyl substances, which are widely-used manufactured chemicals components of which break down slowly over time. Compl. ¶¶ 2-3; *see also* https://www.epa.gov/pfas/pfas-explained [https://perma.cc/A4GD-5JXA]. Perfluorooctane sulfonic acid ("PFOS") (*see infra*) is a form of PFAS.

2

by designating the use or uses to be made of the water and by setting criteria necessary to protect the uses." 40 C.F.R. § 130.3. Under the cooperative federalism scheme of the Act, states have primary responsibility for establishing water quality standards, subject to approval by the EPA. *See* 33 U.S.C. § 1313(c).

Once states have established water quality standards and EPA has approved them, CWA Section 303(d) directs states to identify waters that will not meet those standards in lists submitted to the EPA (the "303(d) list noted above). *Id.* § 1313(d)(1)(A). These 303(d) lists identify the pollutants causing or expected to cause the violation of applicable water quality standards for impaired waters, thereby identifying "waterbody-pollutant combinations". *See* 40 C.F.R. § 130.7(b)(4). States submit 303(d) lists to the EPA biennially in every even-numbered year. 40 C.F.R. § 130.7(d)(1). Under CWA Section 303(d), the EPA acts on 303(d) list submissions by either approving or disapproving the identifications. If the EPA disapproves a 303(d) list submission, it has 30 days following disapproval to identify impaired waterbodies in the state.  33 U.S.C. § 1313(d)(2); *see also* 40 C.F.R. § 130.7(d)(2).

States must then establish, for each waterbody-pollutant combination on their 303(d) list, the "total maximum daily load" ("TMDL"). 33 U.S.C. § 1313(d)(1)(C). TMDLs "set the maximum amount of a pollutant which can be contributed into [a water body] without causing a violation of the water quality standards." *Env't Def. Fund, Inc. v. Costle,* 657 F.2d 275, 294 (D.C. Cir. 1981). States must submit such TMDLs for waterbody-pollutant combinations on the 303(d) list to the EPA for approval or disapproval. EPA then "shall either approve or disapprove such identification and load." 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(1).

B.      **Factual Background**

On March 28, 2025, the Virginia Department of Environmental Quality ("VDEQ") submitted Virginia's final 2024 Section 303(d) list to EPA. Compl. ¶ 45. On July 28, 2025, EPA issued a letter approving the waterbody-pollutant combinations that Virginia included on the 2024 303(d) list, but notifying VDEQ with respect to certain waterbody-pollutant combinations not included on the list that:

> EPA is taking no action, at this time, on water quality related information suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in certain segments in the Middle Chickahominy River watershed. Until such time as EPA takes action, those waterbody-pollutant combinations will remain in the same Integrated Report category consistent with Virginia's 2024 303(d) list as submitted.[2]

Compl. ¶ 55. EPA specified the waterbody-pollutant combinations on which it was "taking no action, at this time" in Appendix B to its Decision Rationale. *Id.* ¶ 59.

III.     **LEGAL STANDARD**

Under Rule 12(b)(1), the Court should dismiss a claim when the Complaint fails to allege facts establishing the court's jurisdiction over the subject matter. *See Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982); *King v. Riverside Reg'l Med. Ctr.,* 211 F. Supp. 2d 779, 780-81 (E.D. Va. 2002). Sovereign immunity precludes federal courts from exercising jurisdiction over a claim against the government unless immunity has been waived by statute. *E.g., J.C. Driskill, Inc. v. Abdnor*, 901 F.2d 383, 385 n.4 (4th Cir. 1990) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)). Waivers of sovereign immunity are strictly construed, *Lane v.*

---

[2] In this cntext, the "Integrated Report" is a document that integrates the reporting requirements of CWA Section 303(d) and Section 305(b) into a single report to the EPA. *See* EPA, Guidance for 2006 Assessment Listing and Reporting Requirements Pursuant to Sections 303(d), 305(b) and 3314 of the Clean Water Act, at 1 (July 29, 2005), https://www.epa.gov/sites/default/files/2015-10/documents/2006irg-report.pdf. EPA guidance recommends use of a five-pargt categorization of waters for purposes of an integrated Report, wherein "Category 5" waters constitute the 303(d) list. *Id.* at pp. 46-47, 57.

*Pena*, 518 U.S. 187, 192 (1996), and must be unequivocal. *Franconia Assocs. v. United States*, 536 U.S. 129, 141 (2002). *See also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). Thus, in suits where the federal government is named as the defendant, "it is the plaintiff's burden to show that an unequivocal waiver of sovereign immunity exists." *Welch v. United States*, 409 F.3d 646, 651 (4th Cir. 2005). Where sovereign immunity has not been waived, the court must dismiss the claim for lack of subject matter jurisdiction. *See, e.g.*, *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768-69 (4th Cir. 1991).

For the purposes of deciding a Rule 12(b)(1) motion, the court presumes that all facts alleged in the complaint are true. *Adams*, 697 F.2d at 1219; *Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995). The court will grant the motion if material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law. *Richmond, Fredericksburg & Potomac R.R. Co.* , 945 F.2d at 768.

## IV. ARGUMENT

A.      **The Court Should Dismiss Count I Because the CWA does not Impose a Non-Discretionary Duty on EPA to Disapprove a State's 303(d) List**

In Count I of the Complaint, Plaintiff asserts a claim under the CWA citizen suit provision, which authorizes any citizen to commence a civil action "against the Administrator [of EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). Because the CWA's citizen suit provision is a limited waiver of sovereign immunity, it must be "construed strictly" in favor of the EPA. *Conservation Law Found., Inc. v. Pruitt*, 881 F.3d 24, 28 (1st Cir. 2018) (quoting *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992)).

Indeed, the Fourth Circuit has interpreted such citizen suit provisions "'narrowly' by confining [their] scope to the enforcement of legally required acts or duties of a specific and discrete nature that precludes broad agency discretion." *Murray Energy Corp. v. Adm'r of EPA*, 861 F.3d 529, 535 (4th Cir. 2017), *as amended* (July 18, 2017) (interpreting the Clean Air Act's analogous citizen suit provision). Thus, when a private litigant brings a citizen suit against the EPA, a clearly mandated, nondiscretionary duty imposed on the Agency is a "prerequisite for federal jurisdiction." *Sanitary Bd. of Charleston v. Wheeler,* 918 F.3d 324, 331 (4th Cir. 2019) (quoting *Miccosukee Tribe of Indians of Fla. v. EPA*, 105 F.3d 599, 602 (11th Cir. 1997)).

The Complaint falls well short of meeting that exacting standard. In Count 1, Plaintiff asserts that EPA "had and has a *mandatory duty to disapprove* Virginia's" 303(d) list, (Compl. ¶ 70 (emphasis added)) and asks the Court to "[d]eclar[e] that EPA has failed to perform its nondiscretionary duties under the CWA section 303(d) and implementing regulations to *disapprove* Virginia's [2024 303(d) list]" and "[o]rder[] EPA to perform its mandatory duties to *disapprove* Virginia's 303(d) List…." (Compl. Relief Requested ¶¶ (1) and (4) (emphasis added)). But nothing in the CWA imposes a non-discretionary duty on EPA to reach a particular result (i.e., disapprove) with respect to a state's 303(d) list. "Put simply, citizens can compel the agency to take some action, but cannot dictate the substance of the resulting decision if it involves the agency's judgment." *Sanitary Bd. of Charleston,* 918 F.3d at 331. The citizen suit provision "does [not] allow a court to exercise judgment that is properly vested in the executive branch." *Id.*

It is well-established that CWA Section 303(d), 33 U.S.C. § 1313(d), does not impose a non-discretionary duty on EPA to reach a particular result, i.e., to approve or disapprove a

6

state's 303(d) list. Faced with precisely the same issue, this Court previously has held:

> The decision whether to approve or disapprove a [state's] § 303(d) submission appears to be a discretionary one, and so not reviewable under the citizen suit provision of the Clean Water Act, which only permits challenge of "any act or duty under this chapter which is not discretionary" with EPA. 33 U.S.C. § 1365(a)(2). The statutory language does not place explicit restrictions upon the [EPA's] authority to approve or disapprove states' submissions, but simply requires that a decision be made. 33 U.S.C. § 1313(d)(2). Thus, the substance of the decision ultimately appears to be discretionary with EPA rather than mandated by the terms of the statute.

*Am. Canoe Ass'n v. EPA,* 30 F. Supp. 2d 908, 918-19 (E.D. Va. 1998).

Other similarly structured CWA provisions have been similarly construed. In *Sanitary Bd. of Charleston,* 918 F.3d at 331-33, the U.S. Court of Appeals for the Fourth Circuit held that CWA Section 303(c) (33 U.S.C. § 1313(c)) did not establish a non-discretionary duty on the EPA to approve or disapprove a state water quality standard submission. CWA Section 303(c) is structured similarly to CWA Section 303(d) in that states make submissions of water quality standards that the EPA either approves or disapproves. The Fourth Circuit reasoned that CWA Section 303(c) "provides no fixed criterion that clearly delineates when approval is required. Instead, the EPA's determination necessarily involves an independent judgment …." *Id.* at 332 (*citing* 40 C.F.R. § 131.11(a)(1)).

Like CWA Section 303(c), Section 303(d) provides for a state submission and a timeframe for the EPA's decision, but "does not … dictate what the [EPA's] decision must be." *Gunpowder Riverkeeper v. Regan,* Civ. No. 1:20-cv-02063, 2021 WL 3722714, at *2-4 (D.D.C. Aug. 23, 2021) (EPA's decision whether to approve or disapprove a state's TMDL submission is discretionary). CWA Section 303(d) states only that the EPA "shall either approve or disapprove such identification … not later than thirty days after the date of submission." 33 U.S.C. § 1313(d)(2). *See also Am. Canoe Ass'n,* 30 F. Supp. 2d at 918-19 (EPA's decision whether to approve or disapprove a state 303(d) list submission is

discretionary).

The "existence of a nondiscretionary duty imposed by the CWA is an indispensable prerequisite to jurisdiction under the citizen suit provision." *Los Angeles Waterkeeper v. Pruitt*, No. 2:17-cv-3454, 2017 WL 8288040, at *3 (C.D. Cal. Nov. 2, 2017) (citing *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1353 (9th Cir. 1978)). Because the CWA does not impose a non-discretionary duty on EPA to reach a particular result regarding a state's 303(d) list submission, the Complaint does not identify a valid waiver of sovereign immunity. The Court should thus dismiss Count I for lack of subject matter jurisdiction. *See Sanitary Bd. of Charleston v. Pruitt*, No. 2:16-cv-03060, 2017 U.S. Dist. LEXIS 92994, at *14 (S.D. W.Va. June 16, 2017) (dismissing claim that the EPA had a non-discretionary duty to approve a water quality standard pursuant to Fed. R. Civ. P. 12(b)(1); "the Court finds that the Sanitary Board has not plausibly alleged a nondiscretionary duty on the part of EPA to approve the Copper Standard. This jurisdictional prerequisite lacking, the Court dismisses [the count]"), *aff'd* 918 F.3d 324 (4th Cir. 2019).

> **B.      The Court Should Dismiss Count II Because the Factual Allegations in the Complaint Do Not Support Plaintiff's Legal Assertion that EPA has Taken a Final Agency Action with Respect to Certain Waterbody-Pollutant Combinations**

Plaintiff fares no better in its second claim, which asserts a challenge under the Administrative Procedure Act ("APA") to EPA's alleged "final agency action" approving the omission from Virginia's 2024 303(d) list of certain waterbody-pollutant combinations, specifically "PFAS-impaired segments of the Middle Chickahominy River." Compl. ¶¶ 80-81. Count II, however, is fatally flawed because the facts pleaded in the Complaint do not support Plaintiff's legal assertion that the EPA has taken a final agency action with respect to those waterbody-pollutant combinations. *See* Compl. ¶¶ 55, 58, 59.

The APA provides a limited waiver of sovereign immunity and a remedy for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The existence of a final agency action is a threshold question to a claim under the APA. *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) ("[T]he 'agency action' complained of must be 'final agency action.'") (quoting 5 U.S.C. § 704). A final agency action must do two things: it must "signal[] the consummation of an agency's decisionmaking process *and* give[] rise to legal rights or consequences." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999); *see Bennett v. Spear,* 520 U.S. 154, 177-78 (1997).

Here, the Complaint does not plead facts that identify a final EPA action with respect the waterbody-pollutant combinations not included on the 2024 303(d) list and identified in Paragraph 59 of the Complaint. Plaintiff's bare legal assertion in Paragraphs 80-81 of the Complaint that there has been a final agency action as to those waterbody-pollutant combinations is insufficient to ward off dismissal. A defendant may assert that federal subject matter jurisdiction does not exist notwithstanding any specific allegations in the complaint. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009). In this situation, a court may consider evidence outside the pleadings in order to determine whether subject matter jurisdiction exists. *Id.*; *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004). Accordingly, the plaintiff's allegations will not receive a blanket presumption of truth, and a dispute of material fact will not prevent a court from evaluating the claims underlying jurisdiction. *United States ex. rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

Moreover, the Court need not accept an unadorned legal assertion that flies in the face

of the very document on which Plaintiff bases its case. *Cf. Call v. Geico Advantage Ins. Co.*, 2023 WL 5109549, at *3 (in the context of a motion pursuant to Rule 12(b)(6), the court may consider documents included with the complaint; where the "bare allegations" of the complaint conflict with those documents, the documents prevail). Here, the Complaint points to EPA's July 28, 2025 letter to Virginia as a "final" agency action on those waterbody-pollutant combinations, but quotes the letter as follows: "EPA is taking *no action*, at this time, on water quality related information suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in certain segments in the Middle Chickahominy River watershed." Compl. ¶ 55 (emphasis added); *see also* Compl. ¶¶ 58-59. In other words, while the EPA approved all waterbody-pollutant combinations that VADEQ included on its 2024 303(d) list, the EPA expressly notified VDEQ that the EPA was taking no action with respect to the fact that the list did not include certain segments in the Middle Chickahominy River watershed as impaired for PFOS.

Because EPA expressly did not take a final action "at this time," the Agency's letter does not represent "the 'consummation' of [its] decisionmaking process," *Bennett v. Spear,* 520 U.S. at 177-78, with regard to the waterbody-pollutant combinations in the Middle Chickahominy River watershed that are at issue. Because the Complaint fails to identify a final agency action on the waterbody-pollutant combinations in question, the Court should dismiss Plaintiff's claim under the APA for lack of subject matter jurisdiction.

10

## V.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the

Complaint in this matter pursuant to Rule 12(b)(1) for lack of jurisdiction.


Dated: April 29, 2026                    Respectfully submitted,


                                         ADAM R.F. GUSTAFSON
                                         ACTING ASSISTANT ATTORNEY GENERAL


                            By:    /s/_____
                                   Laura J. Glickman
                                   D.C. Bar # 995597
                                   Senior Attorney
                                   U.S. Department of Justice
                                   Environment & Natural Resources Division
                                   Environmental Defense Section
                                   P.O. Box 7611
                                   Washington, D.C. 20044
                                   Tel: (202) 598-3056
                                   laura.glickman@usdoj.gov


                                   TODD W. BLANCHE
                                   ACTING ATTORNEY GENERAL


                            By:     /s/_____
                                   Jonathan H. Hambrick
                                   VSB No. 37590
                                   Attorney for the Defendant
                                   Office of the United States Attorney
                                   919 East Main Street, Suite 1900
                                   Richmond, Virginia 23219
                                   Telephone: (804) 819-5400
                                   Facsimile: (804) 771-2316
                                   Email: jay.h.hambrick@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Jonathan H. Hambrick
Jonathan H. Hambrick
VSB No. 37590
Attorney for the Defendants
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 771-2316
Email: jay.h.hambrick@usdoj.gov