**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**AT RICHMOND**

| | | |
|---|---|---|
| Wild Virginia, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case 3:25-cv-01043 |
| | ) | |
| United States Environmental Protection | ) | |
| Agency, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

Pursuant to the Court's April 21, 2026 Order (Doc. No. 21), Defendants (collectively "EPA") respectfully move the Court to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failing to state a claim upon which relief can be granted.

## I.      INTRODUCTION

Under the Clean Water Act ("CWA"), each state periodically must submit to the EPA for review a list, commonly known as the state's "303(d) list," of waterbodies in the state that are not meeting applicable water quality standards. *See* 33 U.S.C. § 1313(d). This list identifies the pollutants causing or expected to cause violation of the applicable water quality standards for impaired waterbodies, thereby identifying "waterbody-pollutant combinations." *See* 40 C.F.R. § 130.7(b)(4). Count I of the Complaint asserts that, when the EPA notified Virginia that the EPA was not taking action "at this time" with regard to certain waters Plaintiff alleges are impaired by per-and polyfluoroalkyl substances (PFAS), the EPA failed to

perform a "non-discretionary" or "mandatory" duty to "disapprove" Virginia's 2024 303(d) list. Compl. ¶ 70. But even accepting the allegations in the Complaint as true for purposes of this motion, the CWA as a matter of law does not impose a non-discretionary duty on the EPA to disapprove Virginia's 2024 303(d) list. Count II fares no better. In Count II, Plaintiff changes tune, asserts (without factual support) that the EPA took action and approved the omission of those waterbody-pollutant combinations from Virginia's 2024 list, and then purports to challenge that alleged action under the Administrative Procedure Act ("APA"). Compl. ¶¶ 80-81.[1] The Complaint, however, pleads no facts that support the Complaint's bare legal assertion that EPA took a final action with respect to those waterbody-pollutant combinations. To the contrary, the factual allegations pleaded in the Complaint, taken as true, portray the opposite. Absent a final agency action on those waterbody-pollutant combinations, Plaintiff's APA claim must fail.

## II.  BACKGROUND

### A.    The Clean Water Act

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the Act prohibits the discharge of any pollutant into waters of the United States unless that discharge complies with the Act's requirements. *See id.* §§ 1311(a), 1362(12). Those requirements include water quality standards, which "define[] the water quality goals of a water body, or portion thereof, by designating the use or uses to be made of the water and by setting criteria necessary to

---

[1] The term "PFAS" refers to per- and polyfluoroalkyl substances, which are widely-used manufactured chemicals components of which break down slowly over time. Compl. ¶¶ 2-3; *see also* https://www.epa.gov/pfas/pfas-explained [https://perma.cc/A4GD-5JXA]. Perfluorooctane sulfonic acid ("PFOS") (*see infra*) is a form of PFAS.

2

protect the uses." 40 C.F.R. § 130.3. Under the cooperative federalism scheme of the Act, states have primary responsibility for establishing water quality standards, subject to approval by the EPA. *See* 33 U.S.C. § 1313(c).

Once states have established water quality standards and EPA has approved them, CWA Section 303(d) directs States to identify waters that will not meet those standards in lists submitted to the EPA (the "303(d) list noted above). *Id.* § 1313(d)(1)(A). These 303(d) lists identify the pollutants causing or expected to cause the violation of applicable water quality standards for impaired waters, thereby identifying "waterbody-pollutant combinations". *See* 40 C.F.R. § 130.7(b)(4). States submit 303(d) lists to the EPA biennially in every even-numbered year. 40 C.F.R. § 130.7(d)(1). Under CWA Section 303(d), the EPA acts on 303(d) list submissions by either approving or disapproving the identifications. If the EPA disapproves a 303(d) list submission, it has 30 days following disapproval to identify impaired waterbodies in the state.  33 U.S.C. § 1313(d)(2); *see also* 40 C.F.R. § 130.7(d)(2).

States must then establish, for each waterbody-pollutant combination on their 303(d) list, the "total maximum daily load" ("TMDL"). 33 U.S.C. § 1313(d)(1)(C). TMDLs "set the maximum amount of a pollutant which can be contributed into [a water body] without causing a violation of the water quality standards." *Env't Def. Fund, Inc. v. Costle,* 657 F.2d 275, 294 (D.C. Cir. 1981). States must submit such TMDLs for waterbody-pollutant combinations on the 303(d) list to the EPA for approval or disapproval and EPA then "shall either approve or disapprove such identification and load." 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(1).

## B.    Factual Background

On March 28, 2025, the Virginia Department of Environmental Quality ("VDEQ") submitted Virginia's final 2024 Section 303(d) list to EPA. Compl. ¶ 45. On July 28, 2025, EPA

issued a letter approving the waterbody-pollutant combinations that Virginia included on the

2024 303(d) list, but notifying VDEQ with respect to certain waterbody-pollutant combinations

not included on the list that:

> EPA is taking no action, at this time, on water quality related information
> suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in
> certain segments in the Middle Chickahominy River watershed. Until such time as
> EPA takes action, those waterbody-pollutant combinations will remain in the same
> Integrated Report category consistent with Virginia's 2024 303(d) list as
> submitted. [2]

Compl. ¶ 55. EPA specified the waterbody-pollutant combinations on which it was "taking no

action, at this time" in Appendix B to its Decision Rationale. *Id.* ¶ 59.

### III.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal

sufficiency of the Complaint and prevail when the complaint fails as a matter of law to state a

claim upon which the court can grant relief. Fed. R. Civ. P. 12(b)(6); *see Randall v. United*

*States*, 30 F.3d 518, 522 (4th Cir. 1994). A Rule 12(b)(6) motion should be granted where a

plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*,

684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009))

(internal quotation marks omitted). To be facially plausible, a claim must contain "factual

content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged," *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir.

---

[2] In this context, the "Integrated Report" is a document that integrates the reporting requirements of CWA Section 303(d) and Section 305(b) into a single report to the EPA. *See* EPA, Guidance for 2006 Assessment Listing and Reporting Requirements Pursuant to Sections 303(d), 305(b) and 3314 of the Clean Water Act, at 1 (July 29, 2005), https://www.epa.gov/sites/default/files/2015-10/documents/2006irg-report.pdf. EPA guidance recommends use of a five-part categorization of waters for purposes of an integrated Report, wherein "Category 5" waters constitute the 303(d) list. *Id.* at pp. 46-47, 57.

2013) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted), and the plaintiff is entitled to relief.

In considering a Rule 12(b)(6) motion, a court must give all reasonable inferences to the plaintiff and accept all factual allegations as true. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). A court should also consider documents beyond the complaint including any "documents incorporated into the complaint by reference." *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd*, 551 U.S. 308, 322 (2007)). A court, however, is not bound to accept as true any "'bare legal conclusions'", whether contained in the complaint or the incorporated documents. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012) (citing *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011)). And the court should disregard legal conclusions "couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Call v. Geico Advantage Ins. Co.*, No. 3:22-CV-652-HEH, 2023 WL 5109549, at *2 (E.D. Va. Aug. 9, 2023) (quoting *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019)).

## IV. <u>ARGUMENT</u>

**A.      The Court Should Dismiss Count I Because the CWA does not Impose a Non-Discretionary Duty on EPA to Disapprove a State's 303(d) List**

In Count I of the Complaint, Plaintiff asserts a claim under the CWA's citizen suit provision, which authorizes any citizen to commence a civil action "against the Administrator [of EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). The Fourth Circuit has interpreted such citizen suit provisions "'narrowly' by confining [their] scope to the enforcement of legally required acts or duties of a specific and discrete nature

that precludes broad agency discretion." *Murray Energy Corp. v. Adm'r of EPA*, 861 F.3d 529, 535 (4th Cir. 2017), *as amended* (July 18, 2017) (interpreting the Clean Air Act's analogous citizen suit provision).

Count I fails because it seeks to enforce a non-existent non-discretionary duty. In Count I, Plaintiff asserts that EPA "had and has a *mandatory duty to disapprove* Virginia's" 303(d) list, (Compl. ¶ 70 (emphasis added)) and asks the Court to "Declar[e] that EPA has failed to perform its nondiscretionary duties under CWA section 303(d) and implementing regulations to *disapprove* Virginia's [2024 303(d) list] …" and "Order[] EPA to perform its mandatory duties to *disapprove* Virginia's 303(d) List…." (Compl. Relief Requested ¶¶ (1) and (4) (emphasis added)). But nothing in the CWA imposes a non-discretionary duty on EPA to disapprove a state's 303(d) list. "Put simply, citizens can compel the agency to take some action, but cannot dictate the substance of the resulting decision if it involves the agency's judgment." *Sanitary Bd. of Charleston v. Wheeler,* 918 F.3d 324, 331 (4th Cir. 2019). The citizen suit provision "does [not] allow a court to exercise judgment that is properly vested in the executive branch." *Id.*

It is long settled that CWA Section 303(d) does not impose a non-discretionary duty on the EPA to approve or disapprove a state's 303(d) list submission. Faced with precisely the same issue, this Court previously has held:

> The decision whether to approve or disapprove a [state's] § 303(d) submission appears to be a discretionary one, and so not reviewable under the citizen suit provision of the Clean Water Act, which only permits challenge of "any act or duty under this chapter which is not discretionary" with EPA. 33 U.S.C. § 1365(a)(2). The statutory language does not place explicit restrictions upon the [EPA's] authority to approve or disapprove states' submissions, but simply requires that a decision be made. 33 U.S.C. § 1313(d)(2). Thus, the substance of the decision ultimately appears to be discretionary with EPA rather than mandated by the terms of the statute.

*Am. Canoe Ass'n v. EPA,* 30 F. Supp. 2d 908, 918-19 (E.D. Va. 1998).

Other similarly structured CWA provisions have been similarly construed. In *Sanitary Bd. of Charleston,* 918 F.3d at 331-33, the U.S. Court of Appeals for the Fourth Circuit held that CWA Section 303(c) (33 U.S.C. § 1313(c)) did not establish a non-discretionary duty on the EPA to approve or disapprove a state water quality standard submission. The Fourth Circuit reasoned that CWA Section 303(c) "provides no fixed criterion that clearly delineates when approval is required. Instead, the EPA's determination necessarily involves an independent judgment …." *Id.* at 332 (*citing* 40 C.F.R. § 131.11(a)(1)).

Like CWA Section 303(c), Section 303(d) provides for a state submission and a timeframe for the EPA's decision, but "does not … dictate what the [EPA's] decision must be." *Gunpowder Riverkeeper v. Regan,* No. 1:20-cv-02063, 2021 WL 3722714, at *2-4 (D.D.C. Aug. 23, 2021) (EPA's decision whether to approve or disapprove a state's TMDL submission is discretionary). CWA Section 303(d) states only that the EPA "shall either approve or disapprove such identification … not later than thirty days after the date of submission." 33 U.S.C. § 1313(d)(2).

Because the CWA does not impose a non-discretionary duty on EPA to disapprove a state's 303(d) list submission, the Complaint does not state a claim upon which relief can be granted and must be dismissed. *See Gunpowder Riverkeeper v. Regan,* 2021 WL 3722714, at *4 (dismissing claim of non-discretionary duty to disapprove a state's TMDL submission pursuant to both Rule 12(b)(1) and 12(b)(6)).

  **B.  The Court Should Dismiss Count II Because the Factual Allegations in the Complaint Do Not Support Plaintiff's Legal Assertion that EPA has Taken a Final Agency Action with Respect to Certain Waterbody-Pollutant Combinations**

Plaintiff fares no better in its second claim, which asserts a challenge under the Administrative Procedure Act ("APA") to EPA's alleged "final agency action" allegedly

approving the omission from Virginia's 2024 303(d) list of certain waterbody-pollutant combinations, specifically "PFAS-impaired segments of the Middle Chickahominy River." Compl. ¶¶ 80-81. Count II, however, is fatally flawed because the facts pleaded in the Complaint do not support Plaintiff's legal assertion that the EPA has taken a final agency action with respect to those waterbody-pollutant combinations. *See* Compl. ¶¶ 55, 58, 59.

The APA provides a remedy for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The existence of a final agency action is a threshold question to a claim under the APA. *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006); *see Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 61-62 (2004) ("[T]he 'agency action' complained of must be 'final agency action.'") (quoting 5 U.S.C. § 704). A final agency action must do two things: it must "signal[] the consummation of an agency's decisionmaking process *and* give[] rise to legal rights or consequences." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999) (emphasis in original); *see Bennett v. Spear,* 520 U.S. 154, 177-78 (1997).

Here, the Complaint does not plead facts that identify a final EPA action with respect to the waterbody-pollutant combinations identified in Paragraph 59 of the Complaint. Plaintiff's bare legal assertion in Paragraphs 80-81 of the Complaint that there has been a final agency action as to those waterbody-pollutant combinations is insufficient to ward off dismissal. Although the Court in deciding a motion to dismiss must take as true the allegations of the Complaint, the Court need not accept bare legal conclusions or allegations that are contradicted elsewhere in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. at 678. And the Court considering a motion to dismiss pursuant to Rule 12(b)(6) should disregard legal

8

conclusions "couched as facts or unwarranted inferences, unreasonable conclusions, or arguments," *Call v. Geico Advantage Ins. Co.*, 2023 WL 5109549, at *2 (quoting *Turner v. Thomas*, 930 F.3d at 644 ).

The Court is not bound to accept as true any bare legal conclusions, whether contained in the complaint or the incorporated documents. *Burnette v. Fahey*, 687 F.3d 171, 180 (4th Cir. 2012) (citing *Aziz v. Alcolac, Inc.*, 658 F.3d at 391). The Court's Rule 12(b)(6) review involves separating factual allegations from legal conclusions, and the Court must grant a Rule 12(b)(6) motion where a complaint fails to provide sufficient non-conclusory factual allegations to allow the court to draw the reasonable inference of the defendant's liability. *See Burnette v. Fahey*, 687 F.3d at 180; *Francis v. Giacomelli*, 588 F.3d 186, 196-97 (4th Cir. 2009).

Moreover, the Court need not accept an unadorned legal assertion that flies in the face of the very document on which Plaintiff bases its case. *See Call v. Geico Advantage Ins. Co.*, 2023 WL 5109549, at *3 (the court may consider documents included with the complaint; where the "bare allegations" of the complaint conflict with those documents, the documents prevail). Here, the Complaint points to EPA's July 28, 2025 letter to Virginia as embodying a "final" agency action on those waterbody-pollutant combinations (Compl. ¶¶ 80-81), but elsewhere quotes the letter as follows: "EPA is taking *no action*, at this time, on water quality related information suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in certain segments in the Middle Chickahominy River watershed." Compl. ¶ 55 (emphasis added); *see also* Compl. ¶¶ 58-59.  In other words, while the EPA approved all waterbody-pollutant combinations that VADEQ included on its 2024 303(d) list, the EPA expressly took no action with respect to the fact that the list did not include certain segments in the Middle Chickahominy River watershed as impaired for PFOS.

Because EPA expressly withheld action, the Agency's letter does not represent "the 'consummation' of [its] decisionmaking process," *Bennett v. Spear,* 520 U.S. at 177-78, with regard to the waterbody-pollutant combinations in the Middle Chickahominy River watershed that are at issue. The Complaint cannot conjure a final agency action simply by asserting one exists in the face of factual allegations to the contrary. Because the Complaint fails to plead facts that identify a final agency action on the waterbody-pollutant combinations in question, the Court should dismiss Plaintiff's claim under the APA for failing to state a claim on which relief can be granted.

## V.     CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint in this matter.

Dated: April 29, 2026                    Respectfully submitted,

                                         ADAM R.F. GUSTAFSON
                                         ACTING ASSISTANT ATTORNEY GENERAL


                         By:    /s/_____
                                Laura J. Glickman
                                D.C. Bar # 995597
                                Senior Attorney
                                U.S. Department of Justice
                                Environment & Natural Resources Division
                                Environmental Defense Section
                                P.O. Box 7611
                                Washington, D.C. 20044
                                Tel: (202) 598-3056
                                laura.glickman@usdoj.gov

TODD W. BLANCHE
ACTING ATTORNEY GENERAL


By:   _/s/_____
      Jonathan H. Hambrick
      VSB No. 37590
      Attorney for the Defendant
      Office of the United States Attorney
      919 East Main Street, Suite 1900
      Richmond, Virginia 23219
      Telephone: (804) 819-5400
      Facsimile: (804) 771-2316
      Email: jay.h.hambrick@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Jonathan H. Hambrick
Jonathan H. Hambrick
VSB No. 37590
Attorney for the Defendants
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 771-2316
Email: jay.h.hambrick@usdoj.gov