**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

| | |
|---|---|
| Wild Virginia, Inc., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case 3:25-cv-01043 |
| | ) |
| United States Environmental Protection | ) |
| Agency, et al. | ) |
| | ) |
| Defendants. | ) |
| | ) |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Court should deny Plaintiff's Motion for Partial Summary Judgment (Doc. No. 15) ("Motion") as to Count I of the Complaint (Doc. No. 1). Count I of the Complaint invokes the Clean Water Act's ("CWA") citizen suit provision (33 U.S.C. § 1365), which provides an avenue for relief when the EPA has failed to perform a non-discretionary duty. Plaintiff's Motion and Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment (Doc. No. 16) ("Plaintiff's Memorandum"), however, assert and argue a different alleged non-discretionary duty than that alleged in the Complaint. As it is well-established that a party cannot amend its complaint in a summary judgment brief, Plaintiff's Motion must be denied.

## I.    BACKGROUND

### A.    The Clean Water Act

Congress enacted the CWA "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the Act prohibits

the discharge of any pollutant into waters of the United States unless that discharge complies with the Act's requirements. *See id.* §§ 1311(a), 1362(12). Those requirements include water quality standards (*Id.* § 1311(b)(1)(C)), which "define[] the water quality goals of a water body, or portion thereof, by designating the use or uses to be made of the water and by setting criteria necessary to protect the uses." 40 C.F.R. § 130.3. Under the cooperative federalism scheme of the Act, states have primary responsibility for establishing water quality standards, subject to approval by the EPA. *See* 33 U.S.C. § 1313(c).

Once states have established water quality standards and the EPA has approved them, CWA Section 303(d) directs States to identify and submit to the EPA a list ("the "303(d) list") of waters that will not meet those standards. *Id.* § 1313(d)(1)(A). These 303(d) lists identify the pollutants causing or expected to cause the violation of applicable water quality standards, thereby identifying "waterbody-pollutant combinations." *Id.* § 1313(d)(1)(A); 40 C.F.R. § 130.7(b)(4). States submit 303(d) lists to EPA biennially in every even-numbered year. 40 C.F.R. § 130.7(d)(1). Virginia, like many states, generally submits its 303(d) list as part of an "Integrated Report" that includes other water quality information, including information submitted pursuant to Section 305(b) of the CWA (33 U.S.C. § 1315(b)).[1] Under CWA Section 303(d), EPA acts on 303(d) list submissions by either approving or disapproving the identifications. If EPA disapproves a 303(d)

---

[1] *See* Memorandum from Diane Regas, Director, Office of Wetlands, Oceans and Watersheds to Water Division Directors Regions 1-10 (July 29, 2005) re *Guidance for 2006 Assessment, Listing and Reporting Requirements Pursuant to Sections 303(d), 305(b) and 314 of the Clean Water Act* (available at: https://www.epa.gov/sites/default/files/2015-10/documents/2006irg-report.pdf) [**https://perma.cc/4X35-6C8G**] *See also* Complaint Exhibit 1 (Doc. # 1-3) (Virginia's 2024 305(b)/303(d) Water Quality Assessment Integrated Report). Unlike a submission pursuant to CWA Section 303(d), the EPA does not take action (*i.e.,* approve or disapprove) information submitted pursuant to Section 305(b). 33 U.S.C. § 1315(b).

list submission, it has 30 days following disapproval to identify impaired waterbodies in the state. 33 U.S.C. § 1313(d)(2); *see also* 40 C.F.R. § 130.7(d)(2).

States must then establish, for each waterbody-pollutant combination on the 303(d) list, the "total maximum daily load" ("TMDL") for each pollutant. 33 U.S.C. § 1313(d)(1)(C). TMDLs "set the maximum amount of a pollutant which can be contributed into [a water body] without causing a violation of the water quality standards." *Env't Def. Fund, Inc. v. Costle,* 657 F.2d 275, 294 (D.C. Cir. 1981). States must submit such TMDLs for waterbody-pollutant combinations identified on the 303(d) list to the EPA for approval or disapproval. EPA then "shall either approve or disapprove such identification and load." 33 U.S.C. § 1313(d)(2); 40 C.F.R. § 130.7(d)(1).

### B.    Statement of Undisputed Material Facts

Plaintiff did not include in its Memorandum a specifically captioned section listing all material facts as to which it contends there is no genuine issue and citing record support for such facts as required by Local Civil Rule 56(b). As a result, it is not clear what material facts Plaintiff is asserting are undisputed in this matter. [2] Nevertheless, Defendants include discussion of the relevant factual background below.

### C.    Factual Background

In anticipation of preparing its 2024 Integrated Report, the Virginia Department of Environmental Quality ("VDEQ") in March 2023 released for public notice and comment its draft 2024 Water Quality Assessment Guidance Manual, which describes how VDEQ anticipates

---

[2] Identification of which facts are material for purposes of Plaintiff's Motion is complicated by the fact that Plaintiff's Motion asserts and argues a different non-discretionary duty than that alleged in the Complaint. This is another reason why Plaintiff's Motion for Summary Judgment should be denied.

assembling, evaluating, and using water quality-related data and information for the purpose of developing the 2024 303(d) list. After receiving public comments on that document, VDEQ released the Final 2024 Water Quality Assessment Guidance Manual in November 2023. Integrated Report (Doc. No. 1-3) at p. 49.[3] The Integrated Report (Doc. No. 1-3) at p. 53 summarized how VADEQ considered fish tissue contamination:

> *Fish Tissue Contamination:*
> Waters exceeding the same toxic human health criteria-based tissue value (TV), listed in Appendix E-1 of the Final 2024 Water Quality Assessment Guidance Manual, in two or more samples are considered impaired for fish consumption.
>
> -or-
>
> *Fish Advisories:*
> [Virginia Department of Health] fish consumption prohibitions and/or advisories, where fish consumption is specifically limited, are considered evidence of non-attainment of the designated use and are therefore considered impaired.

On March 28, 2025, VDEQ submitted Virginia's final 2024 Section 303(d) list to the EPA. Compl. ¶ 45; Integrated Report. As of that date and notwithstanding Plaintiff's efforts to characterize certain statements on the Virginia Department of Health's ("VDH") website, no toxic human health criteria-based tissue value (TV) had been developed for PFAS (*see supra* fn. 3) and no fish tissue consumption advisory had been issued for any waters in Virginia.[4] No fish

---

[3] The Final 2024 Water Quality Assessment Guidance Manual can be found at: https://townhall.virginia.gov/L/GetFile.cfm?File=C:\TownHall\docroot\GuidanceDocs\440\GDoc_DEQ_7624_v1.pdf [https://perma.cc/BTG6-K9YU]

[4] Plaintiff on page 8 of their Memorandum selectively quotes from the Integrated Report (Document No. 1-3). The full statement on page 271 of the Integrated Report demonstrates that no fish consumption advisory for PFAS had been issued by the Virginia Department of Health at the time the Integrated Report was submitted to the EPA (emphasis added):

> Since the publication of the draft 2024 IR in April of 2024, VDH identified perfluorooctane sulfonate (PFOS), which is one of many PFAS, as a contaminant of concern in a few species of fish collected from the Chickahominy River and White Oak

consumption advisory was issued by VDH for PFAS in the Middle Chickahominy River until May 9, 2025, i.e., *after* VADEQ had already submitted its Integrated Report to the EPA on March 28, 2025.[5]

On July 28, 2025, EPA issued a letter approving the waterbody-pollutant combinations that Virginia included on the 2024 303(d) list, and notifying VDEQ that, with respect to certain waterbody-pollutant combinations, "EPA is taking no action, at this time, on water quality related information suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in certain segments in the Middle Chickahominy River watershed. Until such time as EPA takes action, those waterbody-pollutant combinations will remain in the same Integrated Report category consistent with Virginia's 2024 303(d) list as submitted."[6] Compl. ¶ 55. The EPA further stated that it was taking no action "at this time while the EPA continues to work with VDEQ in the near term to assess waters where samples suggest the presence of per- and polyfluoroalkyl substances (PFAS)." (Compl. ¶ 58). This statement is consistent with efforts by

---

Swamp. VDH initiated a risk assessment pertaining to the consumption of fish from the affected waterbodies. On October 4, 2024, VDH released to the Virginia Regulatory Townhall a fish consumption advisory guideline for PFOS. *Should the VDH PFOS Guideline become effective, any resulting fish consumption advisories will be used to assess waters in subsequent Integrated Reports.*

[5] https://www.vdh.virginia.gov/news/public-relations-contacts/archived-news-releases/2024-regional-news-releases/virginia-health-officials-issues-fish-consumption-advisory-for-chickahominy-waterhead/ [https://perma.cc/7YWV-B8CM](last visited: April 27, 2026)

[6] As reflected above, the "Integrated Report" in this context is a document that integrates the reporting requirements of CWA section 303(d) and section 305(b) into a single report to EPA. *See* EPA, Guidance for 2006 Assessment, Listing and Reporting Requirements Pursuant to Sections 303(d), 305(b) and 314 of the Clean Water Act, at 1 (July 29, 2005), https://www.epa.gov/sites/default/files/2015-10/documents/2006irg-report.pdf. EPA guidance recommends use of a five-part categorization of waters for purposes of an Integrated Report, wherein "Category 5" waters constitute the 303(d) list. *Id.* at 46-47, 57.

VDEQ described on pages 269-71 of the Integrated Report (Doc. No. 1-3) to conduct studies and collect data that would allow for additional assessment of PFAS in Virginia waters.

## II.    LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012) (citing *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009)).

## III. ARGUMENT

Plaintiff's Motion should be denied because Count I of the Complaint fails to state a claim that EPA violated any non-discretionary duty, and Plaintiff cannot constructively amend its Complaint by asserting a wholly different non-discretionary duty in its Motion.

### A.  Plaintiffs Must Allege a Non-Discretionary Duty that EPA Has Failed to Take to Validly Invoke this Court's Jurisdiction.

Count I of the Complaint asserts a claim under the CWA's citizen suit provision, which authorizes any citizen to commence a civil action "against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). Because the CWA's citizen suit provision is a limited waiver of sovereign immunity, it must be "construed strictly" in favor of the EPA. *Conservation Law Found., Inc. v. Pruitt*, 881 F.3d 24, 28 (1st Cir. 2018) (quoting *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992)). Indeed,

the Fourth Circuit has interpreted such citizen suit provisions "'narrowly' by confining [their] scope to the enforcement of legally required acts or duties of a specific and discrete nature that precludes broad agency discretion." *Murray Energy Corp. v. Adm'r of EPA*, 861 F.3d 529, 535 (4th Cir. 2017), *as amended* (July 18, 2017) (interpreting the Clean Air Act's analogous citizen suit provision). As a threshold matter, the Complaint must identify a non-discretionary duty that the EPA has failed to perform. The "existence of a nondiscretionary duty imposed by the CWA is an indispensable prerequisite to jurisdiction under the citizen suit provision." *Los Angeles Waterkeeper v. Pruitt*, No. 2:17-cv-3454, 2017 WL 8288040, at *3 (C.D. Cal. Nov. 2, 2017) (citing *Kennecott Copper Corp. v. Costle*, 572 F.2d 1349, 1353 (9th Cir. 1978)); *see also Sanitary Bd. of Charleston v. Wheeler,* 918 F.3d 324, 331 (4th Cir. 2019) (quoting *Miccosukee Tribe of Indians of Fla. v. EPA*, 105 F.3d 599, 602 (11th Cir. 1997)) (When a private litigant brings a citizen suit against the EPA, a clearly mandated, nondiscretionary duty imposed on the Agency is a "prerequisite for federal jurisdiction").

### B. EPA Does Not Have a Non-Discretionary Duty To Disapprove State 303(d) List Submissions.

In Count I, the Complaint asserts that the EPA had a non-discretionary duty to disapprove Virginia's 2024 303(d) list. (Compl. ¶ 70; Compl. Relief Requested ¶¶ (1) and (4)). But nothing in the CWA imposes a non-discretionary duty on EPA to disapprove a state's 303(d) list. Accordingly, Count I of the Complaint fails to assert a clearly mandated, non-discretionary duty as required by the Clean Water Act.

Section 303(d)(2) requires EPA to "either approve or disapprove" state TMDL submissions. 33 U.S.C. § 1313(d)(2). The choice between approval or disapproval is a quintessential discretionary determination that involves the exercise of the EPA's scientific judgment and expertise. Thus, nothing in the Clean Water Act imposes a non-discretionary

7

duty on the EPA to reach a particular result (*i.e., disapprove)* with respect to a state's 303(d) list submission. As stated by this Court over two decades ago:

> The decision whether to approve or disapprove a [state's] § 303(d) submission appears to be a discretionary one, and so not reviewable under the citizen suit provision of the Clean Water Act, which only permits challenge of "any act or duty under this chapter which is not discretionary" with EPA. 33 U.S.C. § 1365(a)(2). The statutory language does not place explicit restrictions upon the [EPA's] authority to approve or disapprove states' submissions, but simply requires that a decision be made. 33 U.S.C. § 1313(d)(2). Thus, the substance of the decision ultimately appears to be discretionary with EPA rather than mandated by the terms of the statute.

*Am. Canoe Ass'n v. EPA,* 30 F. Supp. 2d 908, 918-19 (E.D. Va. 1998).

In other words, the Clean Water Act's citizen suit provision "does [not] allow a court to exercise judgment that is properly vested in the executive branch." *Sanitary Bd. of Charleston,* 918 F.3d at 331.

This reasoning is confirmed by analogy to Section 303(c), which likewise requires EPA to determine that state water quality standards do or do not conform to the Clean Water Act. *See* 33 U.S.C. § 1313(c). In *Sanitary Board of Charleston,* the Fourth Circuit held that this section does not establish a non-discretionary duty on the EPA to approve or disapprove a state water quality standard submission because approval or disapproval of a state water quality standard requires the EPA to exercise its scientific judgment and expertise. 918 F.3d at 331–33. The court reasoned that Section 303(c) "provides no fixed criterion that clearly delineates when approval is required. Instead, the EPA's determination necessarily involves an independent judgment …." *Id.* at 332 (*citing* 40 C.F.R. § 131.11(a)(1)),

Like CWA Section 303(c), Section 303(d) provides for the EPA to make a decision, but "does not … dictate what the [EPA's] decision must be." *Gunpowder Riverkeeper v. Regan,* Civ. No. 1:20-cv-02063, 2021 WL 3722714, at *2-4 (D.D.C. Aug. 23, 2021) (EPA's decision whether to approve or disapprove a state's TMDL submission is discretionary).

8

CWA Section 303(d) states only that the EPA "shall either approve or disapprove such identification [of impaired waters] … not later than thirty days after the date of submission." 33 U.S.C. § 1313(d)(2). Accordingly, EPA had no non-discretionary duty to specifically approve or disapprove Virginia's 303(d) list here.[7]

Contrary to the foregoing law, Plaintiff alleges in its Complaint that EPA "had and has a *mandatory duty to disapprove* Virginia's" 303(d) list" — *not* a duty to approve or disapprove that list. Compl. ¶ 70 (emphasis added). This language was not accidental; in the Relief Requested, Plaintiff requests that the Court to "Declar[e][] that EPA has failed to perform its nondiscretionary duties under the CWA section 303(d) and implementing regulations to *disapprove* Virginia's [2024 303(d) list] … and "Order[] EPA to perform its *mandatory duties to disapprove*  Virginia's 303(d) List…." (Compl. Relief Requested ¶¶ (1) and (4) (emphasis added)). This Court does not have authority to enjoin EPA to reach a particular result in its review of Virginia's 303(d) list; as such, Count I of the Complaint has failed to state a claim for relief or articulate a non-discretionary duty sufficient to invoke the Court's jurisdiction.

### C. Plaintiff Cannot Cure Its Deficient Complaint By Asserting a Different Non-Discretionary Duty in its Motion for Partial Summary Judgment

Perhaps recognizing the flaw in Count I of the Complaint, Plaintiff abandons the allegations in Count I and in its Motion instead requests summary judgment on the basis of a *different* alleged non-discretionary duty. Thus, instead of asserting that EPA violated a non-discretionary duty to disapprove Virginia's 303(d) list, Plaintiff's Motion argues that the EPA

---

[7] On page 18, n.2 of the Memorandum, Plaintiff concedes that a decision whether to approve or disapprove Virginia's 2024 303(d) list must be based on the administrative record, thereby tacitly admitting that the EPA is not under a non-discretionary duty enforceable under 33 U.S.C. § 1365(a)(2) to disapprove the list.

failed a non-discretionary duty to "approve or disapprove" Virginia's 2024 303(d) list "in its entirety." Memorandum in Support of Motion for Partial Summary Judgment (Doc. No. 16) at 18. In other words, according to Plaintiff's Motion, the EPA's fault lies not in a failure to disapprove Virginia's 2024 303(d) list, but in allegedly "carv[ing] out a list of waterbody segments for which it purported to take 'no action' [at this time].'" Motion for Partial Summary Judgment (Doc. No. 15) at 1. And instead of asking the Court to "Declar[e] that EPA has failed to perform its nondiscretionary duties under the CWA section 303(d) and implementing regulations to *disapprove* Virginia's [2024 303(d) list] … and "Order[] EPA to perform its mandatory duties to *disapprove* Virginia's 303(d) List…." (Compl. Relief Requested ¶¶ (1) and (4) (emphasis added)), Plaintiff glosses over the relief requested and simply asks that its Motion for Partial Summary Judgment be granted without describing what the Court should order or what the EPA should do in response.

This distinction has a difference. The "non-discretionary" duty argued in Plaintiff's Motion is a duty to *act* ("approve or disapprove" Virginia's 303(d) list in its entirety and in a single action), while the "non-discretionary" duty alleged in the Complaint is a duty to reach a specific *result* ("disapprove" Virginia's 303(d) list). The non-discretionary duty argued in Plaintiff's Motion simply does not match up with the non-discretionary duty alleged in Count I of the Complaint.[8] Plaintiff cannot gloss over this disconnect and declare Count I to say

---

[8] Because the non-discretionary duty argued in Plaintiff's Motion is not the same non-discretionary duty alleged in the Complaint, the Court need not decide at this time whether Plaintiff is entitled to summary judgment on its alternate theory. However, if the Court does reach the issue, it should deny the Motion because Plaintiff has not established entitlement to judgment as a matter of law on its alternate non-discretionary duty claim. In general, courts recognize that administrative agencies like EPA have flexibility to fulfill Congress's commands in the manner best suited to the task before them. That includes, where appropriate and not contravened by the statutory language, discretion to accomplish its duties using multiple final agency actions. *Transportation Div. of the Int'l Ass'n of Sheet Metal, Air, Rail*

something it does not say; it is well-settled that a party cannot constructively amend its Complaint through summary judgment briefing. *S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC,* 713 F.3d 175, 184-85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy"); *see also U.S. ex rel. Nathan v. Takeda Pharms. N. Am., Inc.,* 707 F.3d 451, 459 n. 8 (4th Cir. 2013) ("[A plaintiff] cannot cure pleading deficiencies in the amended complaint with later-filed supporting documentation"); *Zachair Ltd. v. Driggs,* 965 F. Supp. 741, 748 n. 4 (D. Md. 1997) (A plaintiff is "bound by the allegations contained in its complaint and cannot, through the use of motions briefs, amend the complaint"); *cf., Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.,* 292 F. Supp. 2d 535, 544 (S.D.N.Y. 2003) ("A summary judgment

---

*and Transportation Works v. Fed. RR Admin.*, 10 F.4th 869, 874-75 (D.C. Cir. 2021). Here, Section 303(d) contains absolutely no language requiring a single agency action, stating only that EPA "shall either approve or disapprove such identification and load not later than thirty days after the date of submission." 33 U.S.C § 1313(d)(2). Thus, EPA retains flexibility to act in multiple actions, so long as it meets Congress's deadline.

Plaintiff does not point to any court decision that has held that the EPA has a non-discretionary duty to act upon a State's 303(d) list as a whole (*i.e.,* "in its entirety") in a single action. Plaintiff's reliance on *Ohio Valley Env't Coal., Inc. v. Pruitt,* 893 F.3d 225 (4th Cir. 2018) (Memorandum at p. 16) is misplaced. The excerpt in Plaintiff's memorandum is merely background and the decision focuses on the state's obligations regarding TMDLs, not the EPA's duties in connection with 303(d) list submissions. Plaintiff's reliance on *Anacostia Riverkeeper, Inc. v. Jackson,* 798 F. Supp. 2d 210, 215-16 (D.D.C. 2011) is equally unavailing. The quoted language from that opinion is also from the background section, and the decision focuses on TMDLs, not the EPA's duties in connection with 303(d) list submissions. Nor does Plaintiff's selective quotation from this Court's decision in *American Canoe* establish that Plaintiff is entitled to judgment as a matter of law on its new theory. That decision does not address whether the EPA must take action on a state 303(d) list "in its entirety." Indeed, *American Canoe* can be read to support the opposite, as the Court notes in passing that EPA "partially approved and partially disapproved" Virginia's 1998 303(d) list without comment on the nature of the EPA's action. 30 F. Supp. 2d at 916. Nothing in *American Canoe* requires that the EPA take action upon an entire 303(d) list at one time or approve or disapprove a 303(d) list in its entirety in a single action. Regardless, because the non-discretionary duty argued in Plaintiff's Motion is not the same non-discretionary duty alleged in the Complaint, the Court need not reach this legal question.

11

opposition brief is not a substitute for a timely motion to amend the complaint").

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court deny

Plaintiff's Motion for Summary Judgment, and for the reasons set forth herein and in

Defendants' Motions to Dismiss filed this date dismiss Count I of the Complaint without

prejudice. Given the varying ways in which Plaintiff has framed the non-discretionary duty at

issue, if Plaintiff wishes to pursue a suit, Plaintiff should amend its Complaint to describe

clearly the non-discretionary duty Plaintiff alleges the EPA failed to perform.

Dated: April 29, 2026                      Respectfully submitted,

                                           ADAM R.F. GUSTAFSON
                                           ACTING ASSISTANT ATTORNEY GENERAL

                       By:     /s/_____
                                           Laura J. Glickman
                                           D.C. Bar # 995597
                                           Senior Attorney
                                           U.S. Department of Justice
                                           Environment & Natural Resources Division
                                           Environmental Defense Section
                                           P.O. Box 7611
                                           Washington, D.C. 20044
                                           Tel: (202) 598-3056
                                           laura.glickman@usdoj.gov

                                           TODD W. BLANCHE
                                           ACTING ATTORNEY GENERAL

                       By:      /s/_____
                                           Jonathan H. Hambrick
                                           VSB No. 37590
                                           Attorney for the Defendant
                                           Office of the United States Attorney
                                           919 East Main Street, Suite 1900
                                           Richmond, Virginia 23219
                                           Telephone: (804) 819-5400
                                           Facsimile: (804) 771-2316
                                           Email: jay.h.hambrick@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

/s/ Jonathan H. Hambrick
Jonathan H. Hambrick
VSB No. 37590
Attorney for the Defendants
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 771-2316
Email: jay.h.hambrick@usdoj.gov