**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

**WILD VIRGINIA, INC.,**

        **Plaintiff,**

        **v.**                          **CIVIL ACTION NO. 3:25-cv-1043**

**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
in his official capacity as Administrator of
U.S. Environmental Protection Agency;
AMY VAN BLARCOM-LACKEY, in her
official capacity as Regional Administrator
for U.S. Environmental Protection Agency
Region III,**

        **Defendants.**

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PURSUANT TO
<u>RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE</u>**

Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 24) seeks dismissal

on grounds of failure to state a claim upon which relief may be granted, mainly by

mischaracterizing both of Plaintiff's claims, just as they have done in their other briefing. *See* ECF

Nos. 12, 20, 23, 26).[1] Contrary to Defendants' mischaracterizations, both of Plaintiff Wild

Virginia's claims are alleged with sufficient factual and legal support. Accordingly, Defendants'

Motion is without merit and must be denied.

Claim I alleges that EPA failed to take action on Virginia's 303(d) List by approving or

disapproving it within thirty days of its submission, as required by Section 303(d) of the CWA.

---

[1] Plaintiff has corrected these mischaracterizations in previous filings (ECF Nos. 13, 27) and has done so again in its responses to Defendants' Motions to Dismiss (ECF No. 22, 24).

Complaint, ECF No. 1, ¶¶ 52, 70–72. Claim I is brought pursuant to the citizen-suit provision in CWA section 505(a)(2), which authorizes any "citizen" to commence a civil action "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator," and provides the district courts with jurisdiction to "order the Administrator to perform such act or duty." 33 U.S.C. § 1365(a)(2); *see* Complaint, ECF No. 1, ¶ 33. Defendants acknowledge that this citizen-suit provision applies to claims that EPA has violated its nondiscretionary duty by failing to either approve or disapprove a state's 303(d) List within thirty days of submission, the exact claim Plaintiff brings. ECF No. 25, at 6.

Claim II alleges that EPA's final action of approving Virginia's 303(d) List was arbitrary and capricious under the APA because Defendants approved the List despite Virginia Department of Environmental Quality's ("VDEQ") failure to evaluate *all* available data—not just data for the Middle Chickahominy River watershed segments—to determine whether any of Virginia's waters were not meeting water quality standards, including whether any of the waters are impaired for PFAS and because DEQ failed to list the Middle Chickahominy River watershed segments as impaired for PFAS despite data showing the presence of PFOS at high levels. Complaint, ECF No. 1, ¶¶ 77–81. This Claim addressed Defendants' final action with respect to the entire List—that is, its approval of the 303(d) List, including its decision to carve out certain segments of the Middle Chickahominy River watershed from consideration. Defendants do not dispute that EPA's approval of Virginia's 303(d) List on July 28, 2025, was a final agency action reviewable under the APA. As their Motion fails to address the final agency action upon which Claim II is based or include any argument that the allegations in Claim II fail to state a claim upon which relief may be granted as to EPA's approval of Virginia's 303(d) List, their Motion must be denied as to Claim

2

II. Defendants argue only that EPA did not take a final action with respect to the carved-out Middle Chickahominy River watershed segments. As explained below, this argument is unavailing because EPA's action of approving Virginia's 303(d) List both logically and legally necessarily included a decision to include or exclude those segments from the final List of impaired waterbodies.

Accordingly, and as explained in more detail below, the Court should that the Complaint alleges both claims with sufficient legal and factual support and deny Defendants' 12(b)(6) Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

On March 28, 2025, the Virginia Department of Environmental Quality ("VDEQ") submitted its 303(d) List to EPA as part of its final "Virginia's 2024 305(b)/303(d) Water Quality Assessment Integrated Report" (the "Integrated Report," attached without its appendices to the Complaint as ECF No. 1-3). Complaint, ECF No. 1, ¶ 45. No Virginia waterbodies were listed as impaired for PFAS; instead, the Integrated Report's references to PFAS are limited to Chapter 6, which describes Virginia's water quality programs. Section 6.6.7, entitled "Emerging Contaminants: Per- and Polyfluoroalkyl Substances (PFAS)," begins with a paragraph of background information on PFAS. Integrated Report at 269. Of the potential harm that PFAS pose, the Integrated Report states only that: "Some PFAS can accumulate in people and animals with repeated exposure, which may have adverse human health effects." *Id*. The Integrated Report does not acknowledge that even low levels of PFAS exposure can be harmful to humans, or that the human health effects can be severe. In contrast, EPA has designated two of the most well-studied PFAS—perfluorooctanesulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA")—as

3

hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), in recognition that they are likely carcinogens for which there is no safe level of exposure. *See generally* 89 Fed. Reg. 39124 (May 8, 2024).

The Integrated Report gives a timeline of efforts by VDEQ and other agencies and localities to study the presence of PFAS in certain Virginia waters but makes no effort to evaluate existing data and makes no conclusions regarding impairment. It describes efforts since October 2021 to respond to "elevated PFAS concentrations in the Middle Chickahominy River watershed" by "identifying any potential risks to public health." Integrated Report at 269–70. It explains that "DEQ contracted with the United States Geological Survey (USGS) to complete a study of PFAS in the Middle Chickahominy River watershed. Fish tissue, sediment and surface water samples were collected at locations throughout the watershed, including in Chickahominy Lake, to understand the possible exposure pathways for human health." *Id*. at 270. Despite the narrative of efforts aimed at collecting data throughout the Middle Chickahominy River watershed, the Integrated Report does not discuss the results of those efforts or draw any conclusions as to whether any portion of the watershed is impaired for any designated uses. Further, although this section also indicates that VDEQ has been monitoring surface waters for PFAS since 2021—such that some of that data was collected within the Integrated Report's 2017–22 review period—it does not discuss the levels of PFAS in the sampling data nor whether those levels indicate impairment. *Id.*

The Integrated Report additionally notes that, in April of 2024, PFOS present in fish collected from the Chickahominy River and White Oak Swamp, led to the Virginia Department of Health's issuance of a fish consumption advisory guideline for PFOS. *Id.* at 271. Instead of evaluating the implications of that advisory on the impairment status of those waters, VDEQ put off any such assessment until guidelines are finalized. *Id.* ("Should the VDH PFOS Guideline

4

become effective, any resulting fish consumption advisories will be used to assess waters in subsequent Integrated Reports."). Similarly, while acknowledging EPA has promulgated draft recommended water criteria for PFAS pollutants, VDEQ stated that such criteria would not be considered until they were finalized by EPA and adopted in Virginia's Water Quality Standards. *Id.*

EPA did not approve or disapprove VDEQ's submission within the 30-day period mandated by CWA section 303(d). Complaint, ECF No. 1, ¶ 52. On July 28, 2025, four months after VDEQ submitted the final 303(d) List within the Integrated Report, EPA issued a letter approving Virginia's 2024 303(d) List. ECF No. 1-4 (July 28, 2025 Letter from Michelle Price-Fay, Director, EPA Region III Water Division, to Elizabeth McKercher, Director, VDEQ Water Planning Division). Despite purporting to approve VDEQ's submission, EPA qualified its action by stating that:

> While the EPA is approving all waterbody-pollutant combinations identified on Virginia's 2024 303(d) list, the EPA *is taking no action, at this time*, on water quality related information suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in certain segments in the Middle Chickahominy River watershed. Until such time as EPA takes action, those waterbody-pollutant combinations will remain in the same Integrated Report category consistent with Virginia's 2024 303(d) list as submitted.

*Id.* at 1 (emphasis added).  EPA's letter was accompanied by an enclosure, titled "Rationale for EPA Approval of Virginia's 2024 Clean Water Act Section 303(d) List" ("Rationale"), *id.* at 3–22, in which EPA further explains that "[w]hile EPA is approving all waterbody-pollutant combinations identified on Virginia's 2024 303(d) list, EPA is taking no action at this time on water quality related information suggesting the presence of PFOS in fish tissue in certain segments in the Middle Chickahominy River watershed." *Id.* at 3; Complaint, ECF No. 1, ¶ 71.

Appendix B to the Rationale lists the segments for which EPA purports to "tak[e] no action at this time":

### Enclosure 3
### Appendix B – List of Segments as to which EPA is taking no action at this time

| AUID | ASSESSMENT_UNIT_NAME | WATER_TYPE_NAME | WATER_SIZE | UNITS |
|---|---|---|---|---|
| VAP-G08E_CHK02A00 | Chickahominy River | ESTUARY | 5.468 | Square Miles |
| VAP-G08E_CHK01A00 | Chickahominy River | ESTUARY | 1.3726 | Square Miles |
| VAP-G07R_CHK01A00 | Chickahominy River | RIVER | 11.03 | Miles |
| VAP-G07L_CHK01A00 | Chickahominy Lake | RESERVOIR | 1050.47 | Acres |
| VAP-G06R_WOS01A98 | White Oak Swamp | RIVER | 6.69 | Miles |
| VAP-G06R_CHK03A02 | Chickahominy River | RIVER | 2.34 | Miles |
| VAP-G06R_CHK02A14 | Chickahominy River | RIVER | 11.78 | Miles |
| VAP-G06R_CHK01A98 | Chickahominy River | RIVER | 7.46 | Miles |

The Rationale acknowledges EPA's duty arising under 40 CFR § 130.7(b)(6)(iii) to determine whether a state has provided a "technical, science-based rationale for decisions not to use data or information in developing" its 303(d) list. "Rationale," at 5–6. EPA found that "Virginia generally provided a rationale for not using the data it assembled and evaluated to develop its list" but limited that conclusion to "the waters on which the EPA is taking action," i.e., those *other than* the excluded segments of the Middle Chickahominy River watershed. *Id.* at 6. Nowhere does EPA purport to make the required determination on the excluded segments.

Regarding waters potentially impaired by PFAS, including the Middle Chickahominy segments, EPA states that it:

> *is taking no action at this time* while the EPA continues to work with VADEQ in the near term to assess waters where samples suggest the presence of per- and polyfluoroalkyl substances (PFAS). Following publication of the draft 2024 303(d) list, VADEQ received public comment from Wild Virginia drawing attention to water quality-related information regarding certain fish tissue and ambient water chemistry data for perfluorooctane sulfonic acid (PFOS) in the

Middle Chickahominy River watershed and urging that certain segments in that watershed be identified as [impaired] for PFOS on Virginia's 2024 303(d) list. The EPA received a similar letter from Wild Virginia following Virginia's submission of the final draft 2024 303(d) list pursuant to 33 U.S.C. § 1313(d)(2) and 40 C.F.R. § 130.7(d). The EPA's action pursuant to 33 U.S.C. § 1313(d)(2) on segments where there is water quality-related data suggesting the presence PFOS remains pending. A list of these segments is provided in Appendix B. Until such time as the EPA takes action, those waterbody-pollutant combinations will remain in the same Integrated Report category consistent with Virginia's 2024 303(d) list as submitted.

*Id.* at 11 (emphasis added). Missing from EPA's letter and Rationale is any approval or disapproval of VDEQ's decision not to list those potentially impaired waters. Also missing is any evaluation of whether any other Virginia waters are impaired for PFAS.

Plaintiff filed this CWA and APA action on December 19, 2025. Plaintiff filed a Motion for Partial Summary Judgment on Claim I on April 15, 2026. Defendants filed the pending Motions to Dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (ECF Nos. 22 and 24, respectively) on April 29, 2026. Plaintiff here responds in opposition to Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) (ECF No. 24).

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should only be granted where a plaintiff has failed to "state a plausible claim for relief" under Rule 8(a). *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)) (cleaned up). Federal Rule of Civil Procedure 8(a) requires only that a complaint contain "a short and plain statement of the grounds for the court's jurisdiction," "of the claim showing that the pleader is entitled to relief," and "a demand for the relief sought." Fed. R. Civ. P. 8(a); *see also*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Facially plausibility means that a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting Iqbal, 556 U.S. at 678) (cleaned up), and that the plaintiff is entitled to relief.

In resolving a 12(b)(6) motion, a court should consider "documents incorporated into the complaint by reference," *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 176 (4th Cir. 2009). A Court must accept all factual allegations as true and make all reasonable inferences in favor of the plaintiff. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). Finally, Federal Rule of Civil Procedure 8(e) counsels that "[p]leadings must be construed so as to do justice."

## ARGUMENT

I.    **The Complaint States a Legally and Factually Sufficient CWA Non-Discretionary Duty Claim that EPA Failed to Take Action on Certain Middle Chickahominy River Watershed Segments (Claim I).**

Defendants' Motion continues the same charade as its Response to Plaintiff's Motion for Partial Summary Judgment (ECF No. 26), mischaracterizing Plaintiff's Complaint in order to argue it does not allege that Defendants' have violated a non-discretionary duty under the CWA. Defendants cherry-pick isolated statements from the Complaint to build a straw-man claim that would be vulnerable to dismissal. But Defendants admit that the *actual* claim asserted in Claim I would state a claim upon which relief may be granted. ECF No. 25, at 6 (acknowledging that the CWA requires EPA to approve or disapprove a state's 303(d) List within thirty days of submission).

8

The Complaint is clear that Plaintiff is asserting Claim I under Defendants' non-discretionary duty to approve or disapprove Virginia's 303(d) List, and that it brings this claim pursuant to the citizen suit provision in CWA Section 505(a)(2), 33 U.S.C. § 1365(a)(2):

> 70. VDEQ's submission of its 303(d) List as part of its 2024 Integrated Report triggered EPA's nondiscretionary duty to approve or disapprove all elements of the 303(d) List. Because VDEQ's submission did not assess waters for impairment based on PFAS pollution despite abundant available data and thus did not satisfy the requirements of CWA section 303(d) and its implementing regulations, EPA had and has a mandatory duty to disapprove Virginia's submission and develop its own, complete list of impaired waters.
>
> 71. EPA's purported approval of Virginia's 303(d) list in VDEQ's Integrated Report wherein EPA declined to take action "on water quality related information suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in certain segments in the Middle Chickahominy River watershed" and other PFAS pollution data failed to satisfy EPA's nondiscretionary duties under Section 303(d)(2).
>
> 72. CWA section 505(a)(2), 33 U.S.C. § 1365(a)(2), authorizes Wild Virginia to bring a civil action in this Court to compel EPA to perform its nondiscretionary duties.

Complaint, ¶¶ 70–72. The Complaint states that the non-discretionary duty at issue is EPA's duty to either "approve or disapprove all elements of the 303(d) List," ¶ 70;[2] that EPA "failed to satisfy [its] nondiscretionary duties under Section 303(d)(2)" by purporting to approve Virginia's 303(d) List while "declin[ing] to take action" on "certain segments in the Middle Chickahominy River watershed," ¶ 71; and that Plaintiff brings Claim I pursuant to that nondiscretionary duty, as

---

[2] Although Plaintiff also alleges in Paragraph 70 that Defendants must disapprove Virginia's 303(d) List based on an assessment of all Virginia waters for PFAS impairment, that is because it would be arbitrary and capricious under the APA for EPA to approve Virginia's List as submitted; thus, EPA's only CWA-compliant option is to disapprove the List. Again, Plaintiff's non-discretionary duty claim is based on EPA's purported failure to take action on the Middle Chickahominy River watershed segments.

9

provided in CWA Section 505(a)(2), 33 U.S.C. § 1365(a)(2). *See also see id.* ¶ 52 (alleging that EPA failed to take action within thirty days); *id.* ¶¶ 55–59 (describing EPA's letter approving the 303(d) List and Rationale with explanation that it was "taking no action" on particular waterbody segments); Rationale, ECF No. 1-4, Appendix B (entitled "List of Segments as to which EPA is taking no action at this time").

Defendants acknowledge that this citizen-suit provision applies to claims that EPA failed to either approve or disapprove a state's 303(d) List within thirty days:

> [N]othing in the CWA imposes a non-discretionary duty on EPA to reach a particular result (i.e., disapprove) with respect to a state's 303(d) list. 'Put simply, citizens can compel the agency to take some action, but cannot dictate the substance of the resulting decision if it involves the agency's judgment.'

*See* ECF No. 25, at 6 (quoting *Sanitary Bd. of Charleston v. Wheeler*, 918 F.3d 324, 331 (4th Cir. 2019)). Defendant is correct that the non-discretionary duty mandated by 33 U.S.C. § 1313(d)(2) and 40 C.F.R. § 130.7(d)(2) requires only an action and not a particular result; the Complaint contains more than enough factual and legal support for that claim—that EPA violated its non-discretionary duty to approve or disapprove a state's 303(d) List within thirty days of submission.

Accordingly, Defendants' Motion must be denied with respect to Claim I.

## II.    The Complaint States a Legally and Factually Sufficient APA Claim that EPA's Approval of Virginia's 303(d) List Was Arbitrary and Capricious (Claim II).

Claim II alleges that EPA's final action of approving Virginia's 303(d) List was arbitrary and capricious under the APA. This is alleged in separate paragraphs to make clear that it covers *both* the portions of the List that EPA expressly approved *and* the waterbody segments upon which EPA purported to take no action, to the extent EPA's claimed lack of action nonetheless legally functions as a final agency action.

First, the Complaint reads, at Paragraphs 77 and 78:

> 77. In preparing the Commonwealth's 303(d) list, VDEQ failed to evaluate all available data to determine whether any of Virginia's waters were not meeting water quality standards, including Virginia's narrative criteria and antidegradation policy requiring the protection of designated and existing uses, as a result of PFAS pollution.
>
> 78. EPA's approval of Virginia's 303(d) List—*other than the stream segments upon which EPA purported to take no action*—constituted final agency action on VDEQ's submittal that was arbitrary and capricious and not in accordance with law, and is reviewable under the APA. 5 U.S.C. §§ 702, 706(2)(A).

Complaint, ¶¶ 77–78 (emphasis added). Paragraph 78 refers to EPA's final action of approving Virginia's 303(d) List with respect to Virginia waters *other than* the carved-out Middle Chickahominy segments. Paragraph 77 clearly alleges that Defendants violated APA as to the approval of the List because Virginia Department of Environmental Quality had "failed to evaluate all available data to determine whether any of Virginia's waters were not meeting water quality standards," including whether any of the waters are impaired for PFAS.

After alleging that EPA's approval of Virginia's 303(d) List was arbitrary and capricious with respect to the waters EPA *did* purport to take action on, Claim II additionally addresses the waterbody segments upon which EPA purported to take no action. This portion of Claim II relates to Claim I in that it covers the alternative legal effect of EPA's carve-out of the Middle Chickahominy segments. If EPA's claimed lack of action indeed constitutes a failure to approve or disapprove the 303(d) List, Defendants have violated their non-discretionary duty under the CWA, as covered by Claim I. Alternatively, the carve-out may actually constitute a final agency action on the Middle Chickahominy segments because it has the legal effect of declining to list those segments as impaired for PFAS despite data showing the presence of PFOS in those

segments;[3] Plaintiff alleges that, in that case, the carve-out of those segments–in addition to the approval of the rest of Virginia's 303(d) List—was an arbitrary and capricious final agency action that violated the APA.[4]

The inclusion within Claim II of EPA's action on the Middle Chickahominy segments is clearly alleged in Paragraphs 79-81:

> 79. As it failed to analyze numerous data for PFAS contamination across all Virginia waters, *VDEQ similarly failed to utilize data showing that the Middle Chickahominy River watershed was failing to support designated uses as a result of PFOS pollution*, as demonstrated by official state guidance and a later fish consumption advisory warning of the dangers posed by the high levels of the toxic chemical in fish tissue.
>
> 80. *To the extent that EPA's approval of Virginia's 303(d) list in VDEQ's Integrated Report, wherein EPA declined to take action "on water quality related information suggesting the presence of perfluorooctane sulfonic acid (PFOS) in fish tissue in certain segments in the Middle Chickahominy River watershed" and other*

---

[3] EPA's characterization of its decision to carve out the Middle Chickahominy segments as "taking no action" is not dispositive of whether that decision constitutes a final agency action or is part of the larger final agency action of EPA's approval of Virginia's 303(d) List. The Court need not accept EPA's characterization. "Final agency actions are those that 'mark the consummation of the agency's decisionmaking process' and 'by which rights or obligations have been determined, or from which legal consequences will flow.'" *Am. Fed'n of Tchrs. v. Dep't of Educ.*, 796 F. Supp. 3d 66, 99 (D. Md. 2025) (quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)). In determining whether an agency's decision is a final agency action, "[t]he most important factor concerns the actual legal effect (or lack thereof) of the agency action in question on regulated entities." *Id.* (quoting *Nat'l Mining Ass'n v. McCarthy*, 758 F.3d 243, 251 (D.C. Cir. 2014)). Here, the lack of inclusion of the Middle Chickahominy segments results has real legal consequences, as segments included on the 303(d) List as impaired receive protections, including the development of total maximum daily loads (TMDLs) and associated pollutant reductions. *See* Complaint, ECF No. 1, ¶ 28 (citing 40 C.F.R. §§ 130.2(j) and 130.7).

[4] The Complaint's inclusion of claims based on different, and potentially conflicting, legal interpretations of EPA's carveout of the Middle Chickahominy segments poses no problem for Plaintiff. Alternative statements of a claim are specifically allowed by Federal Rule of Civil Procedure 8(d)(2). Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."). Additionally, Rule 8(d)(3) allows a party to "state as many separate claims . . . as it has, regardless of consistency."

> *PFAS pollution data, does not constitute a failure to satisfy a nondiscretionary duty actionable under the CWA citizen suit provision, 33 U.S.C. § 1365(a)2), EPA's approval of Virginia's 303(d) List, even though it failed to include PFAS-impaired segments of the Middle Chickahominy River, constituted final agency action on VDEQ's submittal that was arbitrary and capricious and not in accordance with law, and is reviewable under the APA. 5 U.S.C. §§ 702, 706(2)(A).*

> 81. EPA's approval of Virginia's Integrated Report is arbitrary and capricious and not in accordance with law, and thus must be vacated under the APA, because VDEQ's submission does not satisfy statutory and regulatory requirements to consider and act upon all available data, specifically data indicating impairment by PFOS and other PFAS. Further, EPA failed to rectify its approval of VDEQ's submission with the Direction of the Region III Water Division's prior determination that "VDEQ didn't provide a scientific, technical justification for not using the [PFOS] data" such that the agency would need to "withdraw and update the rationale."

Complaint, ¶¶ 79–81 (emphasis added).

The Complaint cites the APA's judicial review provision in support of the Court's subject-matter jurisdiction over Claim II:

> 34. The Administrative Procedure Act ("APA") provides that any person who has suffered legal wrong because of agency action or who is adversely affected or aggrieved by agency action within the meaning of a relevant statute is entitled to judicial review of that agency action. 5 U.S.C. § 702.

> 35. The APA states that a reviewing court "shall hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). An agency's action is arbitrary and capricious if the agency relied on factors that Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or its explanation is so implausible that it could not be ascribed to a difference in view or the product of the agency's expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Complaint, ¶¶ 34–35.

13

Defendants do not contest that the approval of Virginia's 303(d) List on July 28, 2025, was a final agency action reviewable under the APA. And Defendants have presented no argument for dismissal under Rule 12(b)(6) for the portion of Claim II that alleges EPA's approval with respect to waters other than the Middle Chickahominy segments violated the APA. Accordingly, the Court should deny Defendants' Motion with respect to EPA's July 28, 2025 approval of Virginia's 303(d) List.

Defendants have argued for dismissal of Claim II only with respect to the portion dealing with EPA's purported lack of action on the Middle Chickahominy segments. Defendants' memorandum in support of its 12(b)(6) Motion reads (at 9–10):

> [W]hile the EPA approved all waterbody-pollutant combinations that VADEQ included on its 2024 303(d) list, the EPA expressly notified VDEQ that the EPA was taking no action with respect to the fact that the list did not include certain segments in the Middle Chickahominy River watershed as impaired for PFOS.
>
> Because EPA expressly did not take a final action "at this time," the Agency's letter does not represent "the 'consummation' of [its] decisionmaking process," *Bennett v. Spear,* 520 U.S. [154, 177-78 (1997)], with regard to the waterbody-pollutant combinations in the Middle Chickahominy River watershed that are at issue. . . . . Because the Complaint fails to plead facts that identify a final agency action on the waterbody-pollutant combinations in question, the Court should dismiss Plaintiff's claim under the APA for failing to state a claim on which relief can be granted.

As noted above, Plaintiff alleges Claim II with respect to the carved-out segments as an alternative legal interpretation of EPA's action. Plaintiff's position is that it is not logically or legally possible for Defendants to take final action on Virginia's 303(d) List while simultaneously not taking action on part of that list. This is because, as explained in Plaintiff's Memorandum in support of its Motion for Partial Summary Judgment:

> EPA's approval of a state's 303(d) List necessarily means that it agrees with the State's selection of waters it has identified as

impaired. It is not logically possible for EPA to approve a list as containing the complete set of impaired waters and at the same time refrain from deciding whether certain waters belong on that list. Approval of a 303(d) List means the EPA deems the List complete. Disapproval means the List, in EPA's judgment, does not contain a complete and accurate selection of the impaired waters, which triggers the requirement for EPA to identify the complete and accurate selection. There is simply no room for EPA to reserve judgment on whether certain waterbody segments are impaired.

In preparing their 303(d) Lists, states are required to use "all existing and readily available water quality-related data and information," and EPA is required to determine whether a state has provided a technical, science-based rationale for not using any such data. 40 C.F.R. § 130.7(b)(5). As explained above, EPA declined to make that determination with respect to the carved-out waterbody segments "where there is water quality-related data suggesting the presence [of] PFOS." ECF No. 1-4 at 11.

Thus, it appears that EPA declined to take action on these segments because VDEQ lacked a science-based rationale for failing to include them on its 303(d) List. But, if EPA determined that VDEQ's Integrated Report failed to satisfy CWA section 303(d)'s requirements by failing to include waterbody segments impaired for PFOS, EPA was required to disapprove of the submission and, within 30 days, develop its own list of Virginia's impaired waters, so that the List could be used immediately to inform Virginia's regulatory efforts. These efforts would include developing Total Maximum Daily Loads that can allocate pollution reductions as necessary to satisfy water quality standards. 40 C.F.R. § 130.7(d)(2).

ECF No. 16, at 16–17. Because of the logical inconsistency of EPA's approval of Virginia's 303(d) List without addressing all waterbodies, Claim II includes EPA's action as it relates to the purportedly carved-out Middle Chickahominy segments along with the rest of Virginia's waters.

## CONCLUSION

As explained above, Defendants' arguments in support of their Motion to Dismiss under Rule 12(b)(6) depend upon mischaracterizations of Plaintiff's Complaint and are entirely without

merit when applied to Plaintiff's actual claims.[5] Both claims are alleged with sufficient legal and

factual support. Accordingly, Defendants' Motion must be denied.


Dated: May 13, 2026                                  Respectfully submitted,

                                                     s/ *Claire Horan*
                                                     Claire Marie Horan (VSB No. 95386)
                                                     APPALACHIAN MOUNTAIN ADVOCATES
                                                     P.O. Box 403
                                                     Charlottesville, Virginia 22902
                                                     choran@appalmad.org
                                                     (907) 687-8561

                                                     Isak Jordan Howell (VSB No. 75011)
                                                     APPALACHIAN MOUNTAIN ADVOCATES
                                                     P.O. Box 2186
                                                     Roanoke, Virginia 24009-2186
                                                     isak@howell-lawoffice.com
                                                     (540) 998-7744


                                                     *Counsel for Wild Virginia*

---

[5] Plaintiff's Complaint is legally and factually sufficient in its statements of both claims. However, if the Court finds that Plaintiff's Complaint requires clarification of the claims brought, Plaintiff requests the Court allow Plaintiff to amend the Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2) and deny both of Defendants' pending motions to dismiss (ECF Nos. 22, 24) as moot. Amendment of the Complaint, rather than dismissal, would be proper in that case because "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022) ("[W]e have often described our Fourth Circuit policy as one to "liberally allow amendment." . . . . And our policy furthers a wider federal policy of—when possible—resolving cases on the merits, instead of on technicalities. . . . . While we generally encourage amendment, there are, of course, circumstances that justify denying a plaintiff the opportunity to try again. We have laid out three such justifications for denying leave to amend: prejudice to the opposing party, bad faith, or where the amendment would be futile." (cleaned up)). It is clear that Plaintiff has not acted in bad faith; it is early in the case such that Defendants would not be prejudiced; and that Defendants' arguments for dismissal lack merit when applied to Plaintiff's actual claims so amendment would not be futile. Thus, if the Court finds the Complaint lacking in clarity as to Plaintiff's claims, Plaintiff would ask that the Court allow it to amend the Complaint in lieu of dismissal.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT RICHMOND**

**WILD VIRGINIA, INC.,**

        **Plaintiff,**

        **v.**                        **CIVIL ACTION NO. 3:25-cv-1043**

**UNITED STATED ENVIRONMENTAL
PROTECTION AGENCY; LEE ZELDIN,
in his official capacity as Administrator of
U.S. Environmental Protection Agency;
AMY VAN BLARCOM-LACKEY, in her
official capacity as Regional Administrator
for U.S. Environmental Protection Agency
Region III,**

        **Defendants.**

## CERTIFICATE OF SERVICE

I, Claire Horan, do hereby certify that on May 13, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system.

                                s/ *Claire Horan*
                                Claire Marie Horan (VSB No. 95386)
                                Appalachian Mountain Advocates
                                P.O. Box 403
                                Charlottesville, Virginia 22902
                                choran@appalmad.org
                                (907) 687-8561

                                *Counsel for Wild Virginia*