**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| WILD VIRGINIA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of U.S. Environmental Protection Agency; AMY VAN BLARCOM-LACKEY, in her official capacity as Regional Administrator for U.S. Environmental Protection Agency Region III,<br><br>Defendants. | No. 3:25-cv-01043 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................1

A. The Clean Water Act: A System of Cooperative Federalism ....................................1

B. Per- and Polyfluoroalkyl Substances (PFAS): Emerging Containment Regulation ....................................2

C. Procedural Background ....................................4

LISTING OF UNDISPUTED MATERIAL FACTS FROM THE RECORD ....................................4

STANDARD OF REVIEW ....................................9

ARGUMENT ....................................10

I. The Court Should Enter Judgment for EPA on Count I, Because It Lacks Jurisdiction ....................................11

i. EPA's July 28, 2025 "No Action, At This Time" Decision Was Not a Final Agency Action for the Specified Waters ....................................11

ii. Count I was Mooted by June 8, 2026 Action ....................................12

II. The Court Should Enter Judgment for EPA on Count II Because EPA's Decision to Approve Virginia's 2024 List is Reasonable and Well-Supported by the Administrative Record ....................................14

CONCLUSION ....................................17

CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE ....................................19

CERTIFICATE OF SERVICE ....................................19

# TABLE OF AUTHORITIES

## Cases

*Am. Canoe Ass'n v. EPA*,
30 F. Supp. 2d 908 (E.D. Va. 1998) ........ 14

*Am. Fed'n of Teachers v. Dep't of Educ.*,
796 F. Supp. 3d 66 (D. Md. 2025) ........ 9

*Anderson v. U.S. Dep't of Hous. & Urb. Dev.*,
731 F. Supp. 3d 19 (D.D.C. 2024) ........ 13

*Bennett v. Spear*,
520 U.S. 154 (1997) ........ 12

*Burnette v. Nicolet, Inc.*,
818 F.2d 1098 (4th Cir. 1986) ........ 9

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992) ........ 12, 13

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 9

*COMSAT Corp. v. Nat'l Sci. Found.*,
190 F.3d 269 (4th Cir. 1999) ........ 12

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
460 F.3d 13 (D.C. Cir. 2006) ........ 11, 12

*Lancaster v. Sec. of the Navy,*
109 F.4th 283 (4th Cir. 2024) ........ 13

*Mashni v. U.S. Army Corps of Eng'rs*,
535 F. Supp. 3d 475 (D.S.C. 2021) ........ 12

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
463 U.S. 29 (1983) ........ 10, 14

*Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n,*
680 F.2d 810 (D.C. Cir. 1982) ........ 13

*Nat'l Council for Adoption v. Jewell,*
156 F. Supp. 3d 727 (E.D. Va. 2015) ........ 9

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 12

*Ohio Valley Env't Coal. v. Aracoma Coal Co.*,
556 F.3d 177 (4th Cir. 2009) .......... 10

*Potomac Riverkeeper, Inc. v. Wheeler*,
381 F. Supp. 3d 1 (D.D.C. 2019) .......... 16

*Preiser v. Newkirk*,
422 U.S. 395 (1975) .......... 12

*Seven Cnty. Infrastructure Coal. v. Eagle County*,
605 U.S. 168 (2025) .......... 10, 14

*State v. Fed. Defs. Program, Inc.*,
931 S.E.2d 123 (Ga. 2026) .......... 15

*West Virginia v. EPA*,
597 U.S. 697 (2022) .......... 9, 10

*Williams v. Ozmint*,
716 F.3d 801 (4th Cir. 2013) .......... 10

**Statutes**

5 U.S.C. § 704 .......... 11, 12

5 U.S.C. § 706(2)(A) .......... 10

33 U.S.C. § 1251(a) .......... 1

33 U.S.C. § 1311 .......... 1

33 U.S.C. § 1311(b)(1)(C) .......... 1

33 U.S.C. § 1313(c) .......... 1

33 U.S.C. § 1313(d)(1)(A) .......... 2

33 U.S.C. § 1313(d)(2) .......... 14

33 U.S.C. § 1314(a)(1) .......... 3

33 U.S.C. § 1315(b) .......... 2

33 U.S.C. § 1362(12) .......... 1

**Code of Federal Regulations**


40 C.F.R. § 130.3 .......... 1

40 C.F.R. § 130.7 .......... 14

40 C.F.R. § 130.7(b)(4) .......... 2

40 C.F.R. § 130.7(b)(5) .......... 2, 14, 15

40 C.F.R. § 130.7(b)(6) .......... 2, 14, 15

40 C.F.R. § 130.7(b)(6)(i) .......... 5, 8

40 C.F.R. § 130.7(d)(1) .......... 2, 17


**Federal Register**


90 Fed. Reg. 3827 (Jan. 15, 2025) .......... 3


**State Materials**


Va. Code § 32.1-19(E) .......... 3

9 Va. Admin. Code § 25-260-5 *et seq.* .......... 3

9 Va. Admin. Code § 25-260-10 .......... 3, 16

9 Va. Admin. Code § 25-260-20 .......... 3

## INTRODUCTION

Defendants, the United States Environmental Protection Agency and its officials (collectively, EPA), review state lists submissions identifying impaired waterways in a system of cooperative federalism under the Clean Water Act. Within this system, EPA has discretion to approve or disapprove a state's list, and EPA used that discretion reasonably when it approved Virginia's submission for 2024 after determining that Virginia's list complied with all regulatory requirements. Thus, Plaintiff cannot prevail on its Administrative Procedure Act claims for allegedly "arbitrary and capricious" conduct and the Court should grant summary judgment for EPA as a matter of law.

## BACKGROUND

### A. The Clean Water Act: A System of Cooperative Federalism

Congress enacted the Clean Water Act "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). To that end, the Act prohibits the discharge of any pollutant into waters of the United States unless that discharge complies with the Act's requirements. *See id.* §§ 1311, 1362(12). Those requirements include water quality standards, *id.* § 1311(b)(1)(C), which "define[] the water quality goals of a water body, or portion thereof, by designating the use or uses to be made of the water and by setting criteria necessary to protect the uses." 40 C.F.R. § 130.3.

The Clean Water Act relies on a system of cooperative federalism, in which states have primary responsibility for establishing water quality standards subject to approval by EPA. *See* 33 U.S.C. § 1313(c). Once states have established water quality standards and EPA has approved them, CWA Section 303(d) directs States to identify and submit to the EPA a list (the "303(d) list") of waters that do not or are not expected to meet those standards even after implementing

the Act's technology-based requirements. *Id.* § 1313(d)(1)(A). These 303(d) lists identify the pollutants causing or expected to cause the violation of applicable water quality standards. *Id.* § 1313(d)(1)(A); 40 C.F.R. § 130.7(b)(4). States submit 303(d) lists to EPA biennially in every even-numbered year. 40 C.F.R. § 130.7(d)(1).

The Virginia Department of Environmental Quality ("Virginia") is the state agency that develops and submits Virginia's 303(d) lists to EPA. Like many states, Virginia generally submits its 303(d) list as part of an "Integrated Report" that includes other water quality information, including information the State submits pursuant to Section 305(b) of the Clean Water Act, 33 U.S.C. § 1315(b). Under Section 303(d), EPA acts on 303(d) list submissions by either approving or disapproving the identifications. When acting on a state 303(d) submission, EPA considers whether the state has satisfied applicable regulatory requirements, including whether the state "assemble[d] and evaluate[d] all existing and readily available water quality-related data and information," 40 C.F.R. § 130.7(b)(5), and whether the state has provided documentation that describes its methodology, the data and information the state used, and its rationale. *Id.* at § 130.7(b)(6); *see also Information Concerning 2024 Clean Water Act Sections 303(d), 305(b) and 314 Integrated Reporting and Listing Decisions*, EPA (March 29, 2023) (providing non-binding guidance on 303(d) lists submitted for 2024) ("EPA Guidance Memo for 2024"), EPA0005469-5512.

### B. Per- and Polyfluoroalkyl Substances (PFAS): Emerging Contaminant Regulation

Per- and Polyfluoroalkyl substances (PFAS), including perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS), are a class of synthetic chemicals that do not readily break down in the environment and may have adverse human health effects. *See* Integrated Report

EPA0004439-4441. They are considered emerging contaminants because the science behind them continues to evolve. *Id.*

For many chemicals known to adversely affect human health, EPA recommends specific ambient water quality criteria that are not expected to cause adverse effects to human health. 33 U.S.C. § 1314(a)(1); EPA, National Recommended Water Quality Criteria- Human Health, www.epa.gov/wqc/national-recommended-water-quality-criteria-human-health-criteria-table [https://perma.cc/LPY8-TMDH] (last accessed Sep. 25, 2026) ("EPA Criteria Table"). In late December 2024, EPA published a proposal for establishing ambient water criteria for PFAS, *see* 90 Fed. Reg. 3827 (Jan. 15, 2025), but that proposal has not been finalized and, as of the time of filing, there are still no federal human health ambient water quality criteria for PFAS. *See* EPA Criteria Table.

Similarly, Virginia has not established any numeric criteria for PFAS in waterbodies. *See generally* 9 Va. Admin. Code § 25-260-5 *et seq*. Thus, for purposes of Clean Water Act, Section 303(d), PFAS are assessed under the Commonwealth's general narrative criteria, which provide that waters should be free from substances that "interfere directly or indirectly with designated uses of such water" or which are "inimical or harmful to human, animal, plant, or aquatic life." *Id.* § 25-260-20. Designated uses include "the production of edible and marketable natural resources, e.g., fish and shellfish." *Id.* § 25-260-10. Relatedly, the Virginia Department of Health provides guidance on fish consumption by issuing fish consumption advisories to Virginians. Va. Code § 32.1-19(E). "A fish consumption advisory is *not* a prohibition of eating fish, but a *warning* about the contaminants present in a fish species. . . developed to protect the general public [] from adverse health effects from exposure to fish contaminants." Virginia Department of Health, Fish Consumption Advisory, https://www.vdh.virginia.gov/environmental-

health/public-health-toxicology/fish-consumption-advisory/ [https://perma.cc/KHE9-C7CB] (last visited Sep. 25, 2026).

### C. Procedural Background

On July 28, 2025, EPA partially approved the 303(d) list for 2024 submitted by Virginia (the "2024 list"), but took "no action, at this time" on certain waters in the Middle Chickahominy watershed that Virginia had not identified as impaired for PFAS. EPA0000014, 25. On December 19, 2025, Plaintiff filed a complaint challenging EPA's decision not to act on those waters. ECF 1. On June 8, 2026, EPA fully approved the 2024 list. ECF 33; EPA0000001-13. Plaintiff amended its complaint to include two claims of arbitrary and capricious conduct under the Administrative Procedure Act: Count I challenging EPA's July 2025 decision and Count II challenging EPA's June 2026 approval. ECF 42. EPA answered the amended complaint, ECF 43, and now respectfully moves the Court for summary judgment.

## Listing of Undisputed Material Facts from the Record

1. Virginia begins preparing for each 303(d) list well in advance, using data from earlier years. For the 2024 list, Virginia looked at the water quality assessments and monitoring data over the six-year period from January 1, 2017, to December 31, 2022. Integrated Report, EPA0004171.
2. On January 11, 2023, EPA Region 3 sent a "kick-off" letter, outlining goals and expectations for the 2024 list submission process with target dates, and informing Virginia that it should "resolve any possible issues well in advance of [its] final submission." EPA0005158-5164. The target date for final submission of the 2024 list to EPA was April 1, 2024. EPA0005160.
3. On March 22, 2023, Virginia released its draft 2024 Water Quality Assessment Guidance Manual ("draft Assessment Methodology") for public comment. EPA0005058. The draft

Assessment Methodology describes how Virginia will evaluate and use water quality-related information to develop the 2024 list. 40 C.F.R. § 130.7(b)(6)(i); EPA0005058; *see also* EPA0005163 (recommending that Virigina establish its assessment methodology early in the process and release it for public comment before the 2024 list).

4. Virginia's comment period for the draft Assessment Methodology lasted until April 21, 2023. EPA0005058. Plaintiff did not submit any comments. *See* EPA0004827-4938.

5. On May 23, 2023, Virginia responded to EPA's milestone target date of April 1, 2024, by proposing that it submit the list in July 2024, due to staffing shortages, but it assured EPA the list was otherwise "on schedule." EPA0005170-5173.

6. On May 30, 2023, Virginia issued its Final 2024 Water Assessment Methodology ("final Assessment Methodology"), outlining the thresholds and methodology that it would use to prepare the 2024 list. EPA0004827-4938. The final Assessment Methodology provided that a waterbody would be identified as impaired if "[a] [Virginia Department of Health] advisory or restriction limit[ed] or prohibit[ed] consumption, based on fish tissue data." EPA0004846, 4852.

7. After the Commonwealth released the final Assessment Methodology, the Virginia Department of Health initiated a risk assessment for PFOS as a contaminant of concern in the Chickahominy River and White Oak Swamp and initiated a risk assessment. EPA0004775.

8. In April 2024, Virginia released its draft 2024 303(d) list for public comment. *See* EPA0004114-4169.

9. On May 22, 2024, Plaintiff submitted a comment to Virginia on the draft 2024 list. EPA0004117-4125. In its comment, Plaintiff argued that "Virginia must designate segments [within] the Chickahominy River watershed as 'impaired.'" *Id.* at 4121.

10. Virginia missed its July 2024 target date for submitting the 2024 list to EPA. In emails, Virginia indicated to EPA that the Commonwealth wanted to evaluate whether a fish consumption advisory on PFOS would be issued to incorporate it in the 2024 list. *See* EPA0005429; EPA0005427 (Sep. 2024); EPA0005431 (Oct. 2024).

11. On March 28, 2025, Virginia submitted its final 2024 list to EPA. EPA0000061-62. The 2024 list did not identify the Middle Chickahominy and White Oak Swamp as impaired for PFOS, but it noted the Virginia Department of Health had initiated a risk assessment and "any resulting fish consumption advisories will be used to assess the waters in subsequent Integrated Reports." Integrated Report, EPA0004170-4488, Integrated Report EPA0004441.

12. On April 7, 2025, the Virginia Department of Health released for public comment a proposed guideline that "the Department [of Health] will use in determining whether to issue" fish consumption advisories due to PFOS. EPA0005059-60.

13. On April 22, 2025, Plaintiff submitted unsolicited comments to EPA, criticizing the "inadequacy" of Virginia's 2024 list with respect to PFAS, and providing its own analysis of PFAS data. EPA0005067-5085.

14. On May 9, 2025, the Virginia Department of Health announced that it had issued a fish consumption advisory for PFOS in the Chickahominy River (the "2025 PFAS Fish Consumption Advisory"). EPA0005223. Virginia forwarded news of the development to EPA. EPA0005459-61.

15. On July 29, 2025, EPA approved other parts of the 2024 list but took "no action, at this time" on the water quality related information suggesting the presence of PFAS in fish tissue in the Middle Chickahominy and White Oak Swamp. EPA0000014-15; *see also* EPA0000025.

a. EPA explained that it was continuing to work "with [Virginia] in the near term to assess waters where the samples suggest" PFAS and noted that Plaintiff had submitted recent comments to both EPA and Virginia on this topic. EPA0000034.

b. EPA noted that, irrespective of listing status, Virginia had "undertaken a number of steps to collect and evaluate water quality related information" concerning PFAS in the Middle Chickahominy, and that EPA appreciated those efforts. *Id.*

*c.* EPA observed that the 2025 PFAS Fish Consumption Advisory was issued after it submitted the 2024 list. EPA "anticipate[d] that [Virginia] would use the information it has collected to update its Assessment Methodologies for its 2026 Section 303(d) list." *Id.*

16. On June 8, 2026, EPA issued a supplemental decision, approving Virginia's 2024 list as submitted on March 28, 2025, including the decision not to list the Middle Chickahominy and White Oak Swamp as impaired for PFAS. EPA0000001-06. In doing so, EPA incorporated its earlier rationale from its July 29, 2025 decision and further described how the remaining portions of the 2024 list satisfied regulatory requirements. EPA's supplemental decision made several key points supporting its approval. *Id.*

a. EPA recognized that Virginia "explained that it had established a time period of 2017-2022 for consideration of water quality data and information to be used to develop" the 2024 list, EPA0000006, and noted that states can reasonably include a "cut-off" date after which no additional data or information will be considered in order to "facilitate the timely completion of a draft list," EPA0000005, n.4.

b. EPA determined that Virginia had provided a summary of the methodologies it used to develop the 2024 list in its Integrated Report, consistent with the regulatory

requirement in 40 C.F.R. § 130.7(b)(6)(i). EPA0000004. EPA noted that for purposes of assessing whether waters are attaining the applicable water quality standards regarding fish consumption, Virginia had identified consideration of fish consumption prohibitions and/or advisories issued by the Virginia Department of Health. EPA0000004-5.

c. EPA recognized that Virginia described efforts to "collect and evaluate PFAS-related data in Virginia's waters," EPA0000005, including the Virginia Department of Health's initiation of a risk assessment for PFOS in the Chickahominy River and White Oak Swamp and action taken to develop a fish consumption advisory guideline for PFOS. EPA0000006. EPA observed that such efforts demonstrated that the Virginia Department of Health was "actively engaged in its established process for determining whether to issue fish consumption advisories for the waters at the time of the [2024 list]." EPA0000006.

d. However, EPA recognized that VADEQ had not identified certain water segments as impaired due to PFOS, given that at the time of its 2024 list submission, "Virginia had neither established a toxic human health criteria-based tissue value (TV) for this emerging contaminant nor issued a fish consumption advisory for the segments associated with PFOS data." EPA0000006. Accordingly, EPA determined that based on the facts and circumstances presented, the record supplied by Virginia "adequately supported its determination not to list segments as impaired due to PFOS based on the existing and readily available data and information from the 2017- 2022 timeframe used for its 2024 303(d) list." *Id.*

e. The EPA again recognized that the 2025 PFAS Fish Consumption Advisory for the Middle Chickahominy River did not exist and was not readily available water quality-related information at the time Virginia developed and submitted the 2024 list. *Id.* EPA reiterated that it expected Virginia to use the new information for subsequent lists.

## STANDARD OF REVIEW

Administrative Procedure Act claims are "adjudicated without a trial or discovery, on the basis of an existing administrative record, and accordingly are properly decided on summary judgment." *Am. Fed'n of Teachers v. Dep't of Educ.*, 796 F. Supp. 3d 66, 89 (D. Md. 2025) (citation omitted). The court's review is limited to the full administrative record that was before the agency at the time of its decision. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). Because of the limited role of the court in reviewing the administrative record, the ordinary summary judgment procedures do not apply. *Am. Fed'n of Teachers,* 796 F. Supp. at 89. Rather than deferring a disputed issue of fact to trial, the court must resolve any disputes on the record and use summary judgment as "the mechanism by which the court decides as a matter of law whether the administrative record permitted the agency to make the decision it did." *Id.* (citations omitted).

Jurisdictional defects can be raised on summary judgment and are a basis for entering judgment as a matter of law. *See, e.g. Burnette v. Nicolet, Inc.,* 818 F.2d 1098 (4th Cir. 1986) (reviewing a decision to grant summary judgment on jurisdictional grounds). In Administrative Procedure Act cases, the burden of showing the agency action was final rests with the plaintiff. *Nat'l Council for Adoption v. Jewell,* 156 F. Supp. 3d 727, 735 (E.D. Va. 2015). By contrast, when a claim is moot, the party asserting mootness bears the burden of establishing it. *West*

*Virginia v. EPA*, 597 U.S. 697, 719-20 (2022). Once mootness is established, that burden shifts and the party claiming an exception to mootness, such as the "capable of repetition yet evading review" exception, bears the burden of proving the exception applies. *See Williams v. Ozmint*, 716 F.3d 801, 809-10 (4th Cir. 2013) (summarizing the case law and noting this is "a narrow exception").

Finally, under the Administrative Procedure Act, agency action will be set aside only if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review of agency action is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192-93 (4th Cir. 2009). The court is not empowered to substitute its judgment for that of the agency. *Id.* (citing *Citizens to Pres. Overton Park*, 401 U.S. at 413-14). Instead, the court considers whether the agency's decision includes "a rational connection between the facts found and the choice made," and will set aside an agency decision only when the agency's action (1) relied on factors which Congress did not intend it to consider, (2) offered an explanation that runs counter to the evidence, or (3) reached a conclusion that is so implausible that it could not be ascribed to a difference of view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm*, 463 U.S. 29, 43-44 (1983) (citation omitted) (emphasizing the "narrow" scope of review). Put differently, the court should enter judgment for the agency as long as its action fall "within a broad zone of reasonableness." *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 169 (2025).

## ARGUMENT

Plaintiffs have brought two claims that challenge EPA's decision to approve Virginia's 2024 list of impaired waterways. Both are infirm. Count I challenges EPA's interim decision to

take "no action, at this time" in July 2025. That decision was not "final agency action" within the meaning of the Administrative Procedure Act, and in any event, it was mooted when EPA approved the list on June 8, 2026. Thus, the Court has no jurisdiction to consider Count I and should enter judgment for EPA.

By contrast, Count II challenges EPA's final decision to approve Virginia's 2024 list on June 8, 2026. The Court has jurisdiction to consider Count II, but the claim still fails as a matter of law. EPA's decision to approve a state's 303(d) list is committed to the agency's discretion, and EPA did not abuse that discretion here. To the contrary, EPA appropriately applied its regulatory criteria for 303(d) lists and reasonably determined that Virginia had both assembled and evaluated all existing and readily available data and adequately supported its decision not to list the Middle Chickahominy and White Oak Swamp consistent with its methodology. EPA had a rational basis for accepting Virginia's list. The Court should enter judgment in favor of EPA.

## I. The Court Should Enter Judgment for EPA on Count I, Because It Lacks Jurisdiction.

The Court should enter judgment for EPA on Plaintiff's challenge to EPA's July 2025 decision to take "no action, at this time" on the water quality related information suggesting the presence of PFOS in fish tissue in segments of the Middle Chickahominy watershed, both because Plaintiff's challenge fails to identify a final agency action and because it is moot.

### i. EPA's July 28, 2025 "No Action, At This Time" Decision Was Not a Final Agency Action for the Specified Waters.

The Administrative Procedure Act provides a remedy for judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Thus, the existence of a final agency action is a threshold requirement for a claim under the Administrative Procedure Act APA. *Fund for Animals, Inc. v.*

*U.S. Bureau of Land Mgmt*., 460 F.3d 13, 18 (D.C. Cir. 2006); *see Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 61-62 (2004) ("[T]he 'agency action' complained of must be 'final agency action.'") (quoting 5 U.S.C. § 704). A final agency action must do two things: it must "signal[] the consummation of an agency's decisionmaking process *and* give[] rise to legal rights or consequences." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 274 (4th Cir. 1999) (emphasis original); *see Bennett v. Spear*, 520 U.S. 154, 177-78 (1997).

EPA's July 28, 2025, decision to take "no action, at this time" on the water quality related information suggesting the presence of PFOS in the Middle Chickahominy and White Oak Swamp was a classic non-final action. The Agency did not make any determination as to those waters and instead deferred a decision, citing its continued work with Virginia on the topic. EPA0000034. A decision to defer an agency determination does not change anyone's legal rights or give rise to consequences. *See Mashni v. U.S. Army Corps of Eng'rs*, 535 F. Supp. 3d 475, 482-83 (D.S.C. 2021) (finding no final agency action when the U.S. Army Corps deferred a Clean Water Act decision).

Plaintiff argues, confusingly, that EPA's June 2026 approval did not render the Agency's earlier decision "no longer a final agency action." ECF 37 at 23. However, the July 28, 2025 "no action, at this time" decision was never final agency action for the waters at issue in the Complaint —neither before nor after the June 8, 2026 decision. The Court has no jurisdiction to review it under the Administrative Procedure Act.

**ii. Count I was Mooted by the June 8, 2026 Action.**

Article III of the Constitution requires that a court be able to grant effective relief through all stages of the litigation or the matter becomes moot. *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975); *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (mootness occurs

when subsequent events "make[] it impossible for the court to grant any effectual relief[.]") (citation modified). "Corrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." *Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n,* 680 F.2d 810, 814 (D.C. Cir. 1982). In that circumstance, vacating the old agency action will not provide the plaintiff with any relief, because the old action is no longer effective, and "[t]he new agency action, not the old one, is what injures the plaintiff going forward" if there is an injury. *See Anderson v. U.S. Dep't of Hous. & Urb. Dev*., 731 F. Supp. 3d 19, 31 (D.D.C. 2024) (explaining superseding agency action) (citations omitted).

Here, EPA's June 8, 2026 action approving Virginia's 2025 list, as submitted, superseded the earlier July 2025 decision to take "no action, at this time" with an approval. Thus, a judgment on the "no action, at this time" decision would have offer no remedy, because EPA's subsequent decision to approve the list would remain in place. And, to the extent Plaintiff had any injury from the "no action, at this time" determination, that ended when EPA took action on June 8, 2026, and approved Virginia's list as submitted.

Nor is Count I saved by the "capable of repetition, yet evading review" exception. *See Lancaster v. Sec. of the Navy,* 109 F.4th 283, 290-91 (4th Cir. 2024) (describing exception to mootness). That exception applies only when the duration of an action is too short to be fully litigated. *Id.* Here, EPA's subsequent agency action can be litigated—and indeed, is being litigated here in the same complaint on much of the same record with the same prayer for relief. *See* ECF 42 ¶¶ 81-93 (Count II). Thus, the Court should dismiss Count I because it no longer presents an active controversy.

**II. The Court Should Enter Judgment for EPA on Count II Because EPA's Decision to Approve Virginia's 2024 List is Reasonable and Well-Supported by the Administrative Record.**

Under the Clean Water Act, the substance of EPA's decision to approve or disapprove a state's 303(d) list is committed to the Agency's discretion. *Am. Canoe Ass'n v. EPA*, 30 F. Supp. 2d 908, 918-19 (E.D. Va. 1998) (citing 33 U.S.C. § 1313(d)(2)). Thus, Plaintiff can only prevail on its Administrative Procedure Act claim if it can show that EPA's decision to approve Virginia's 2024 list lacked a rational basis, *State Farm*, 463 U.S. at 43-44, that falls outside the "broad zone of reasonableness," *Seven County*, 605 U.S. at 169. For multiple reasons, Plaintiff cannot do that here.

In this discretionary framework, EPA reviews the state's submission for compliance with the Clean Water Act implementing regulations in 40 C.F.R. § 130.7. *Am Canoe Ass'n*, 30 F. Supp. 2d. at 918-19. Here, EPA's approval is reasonable because Virginia's 2024 list satisfied the regulatory criteria that EPA uses for evaluating state 303(d) list submissions. *See* 40 C.F.R. § 130.7(b)(5)-(6). As described in EPA's June 2026, supplemental decision, first, Virginia assembled and evaluated all existing and readily available water-related data and information related to PFAS in the Middle Chickahominy and White Oak Swamp in the established data period; and second, Virginia described and followed a methodology that was consistent with its own water quality laws. *See* EPA0000001-06 (evaluating Virginia's list with this regulatory criteria).

Indeed, first, with respect to the data and information Virginia used, the administrative record demonstrates that the Commonwealth had been proactive in gathering PFAS sampling data from the relevant waters. *See* EPA0000034 (recognizing that Virginia "had taken a number of steps" related to PFAS and the Middle Chickahominy, including "extensive monitoring and

source characterization" as well as inter-agency coordination and public notice, and that EPA "appreciate[d] Virgina's efforts.") However, the 2025 PFAS Fish Consumption Advisory did not exist during the time Virginia was working on the 2024 list. *Id.;* EPA0000006 (focusing on information available to Virginia "at the time [its 2024 list] was submitted"). Thus, the 2025 PFAS Fish Consumption Advisory was not available at all, much less "existing and readily available" for the 2024 list. *See* 40 C.F.R. § 130.7(b)(5); *State v. Fed. Defs. Program, Inc*., 931 S.E.2d 123, 131-32 (Ga. 2026) (reviewing common definitions and determining "readily available" means easily obtained without delay or difficulty). Accordingly, EPA reasonably determined that Virginia assembled and evaluated the data and information that was existing and readily available when it submitted the 2024 list.

Second, EPA reasonably concluded that Virginia provided documentation to support its methodology and listing determinations in accordance with 40 C.F.R. § 130.7(b)(6). Specifically, for purposes of assessing applicable water quality standards regarding fish consumption, Virginia identified two methodologies: (1) fish tissue contamination assessed by numeric criteria, or (2) consideration of fish consumption advisories issued by the Virginia Department of Health. EPA0000004-5. For PFOS, Virginia did not have numeric criteria, or a fish consumption advisory at the time of the 2024 list. *Id.* at 6. Thus, the EPA reasonably concluded that Virginia's documentation, "adequately supported its determination not to list segments as impaired due to PFOS based on the existing and readily available data and information from the 2017- 2022 timeframe used for its 2024 303(d) list." *Id.*

EPA recognized that federal and state law did not provide Virginia with numeric water quality criteria for PFAS, as they do for some contaminants. *See* Background, *supra*.

Plaintiff did not comment on the draft Assessment Methodology in March and April of 2023, when Virginia solicited public comment, and even now, Plaintiff does not dispute that fish consumption advisories are a logical method for determining whether water is impaired by PFAS. However, Plaintiff is unhappy with the logical application of Virginia's methodology without the 2025 PFAS Fish Consumption Advisory. Nevertheless, Virginia's methodology set a clear, objective threshold for evaluating PFAS, consistent with the Commonwealth's narrative criteria, and Virginia's 2024 list followed that methodology. *See* EPA0000004, 06 (recognizing that, without "a fish consumption advisory for [waterbody] segments associated with [PFAS]," the waterbody would not be listed as impaired). It was reasonable for EPA to approve Virginia's list based on that methodology, whether or not Plaintiff is pleased with the result.

*Potomac Riverkeeper v. Wheeler* is instructive here. *See* 381 F. Supp. 3d 1, 13-16 (D.D.C. 2019). The plaintiff in *Potomac Riverkeeper* challenged EPA's approval of Virginia's 303(d) list for 2016, arguing that EPA should have disapproved that list because algal blooms allegedly impeded recreational use of the Shanandoah River, which is another "designated use" in Virginia. *See id.* at 6-11; 9 Va. Admin. Code 25-260-10 (listing both recreation and fish production as designated uses). EPA determined that Virginia had met the regulatory requirement to assemble and evaluate all existing and readily available data, and the court agreed. *Potomac Riverkeeper*, 381 F. Supp. 3d at 15-16. The court further found EPA's decision to approve Virginia's list had a rational basis under the Administrative Procedure Act and noted that the information necessary to make "a conclusive impairment determination" under Virginia's narrative criteria is a matter of scientific judgment entitled to significant deference. *Id.* at 21-22. This Court should reach the same conclusion here.

Two additional considerations underscore the reasonableness of EPA's action. *See* EPA0000001-06 (considering the "circumstances" while approving Virginia's 2024 list). First, states prepare 303(d) lists biennially. *See* 40 C.F.R. § 130.7(d)(1) (biennial submission). Information that was not existing or readily available at the time Virginia prepared its 2024 list could be used for future lists. Here, Virginia affirmatively stated that it would consider the 2025 Fish Consumption Advisory for its next submission in 2026, and EPA made clear that it expected Virginia to do so. *See* EPA00004441 (Virginia statement); EPA0000006 (EPA statement). Additionally, omission of these waters from Virginia's 2024 list did not mean that nothing was being done about PFAS contamination. For example, Virginia had "identified concrete steps [it was] pursuing to further develop [the state's] assessment of [PFAS]," and Virginia was "actively engaged" in the process of issuing fish consumption advisories at the time of the 2024 list. EPA0000006.

## CONCLUSION

EPA's July 28, 2025 decision is outside the Court's subject matter jurisdiction, as it was not final agency action, and is now moot. By contrast, the Court has subject matter jurisdiction over the June 8, 2026, decision, which reasonably approved Virginia's 2024 list, after determining that Virginia compiled with all applicable regulations. The Court should enter summary judgment for EPA on both counts in the amended complaint.

Dated: September 25, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy & Natural Resources Division

By: /s/__________________
SARAH WILLIAMS
DC Bar No. 1006622
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 598-9728
sarah.williams@usdoj.gov

TODD W. BLANCHE
ATTORNEY GENERAL

THEOPHANI K. STAMOS
FIRST ASSISTANT UNITED STATES
ATTORNEY

By: /s/__________________
Dennis C. Barghaan, Jr.
Chief, Civil Division
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Facsimile: (703) 299-3983
Email: dennis.barghaan@usdoj.gov

## CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE

I hereby certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg; and that every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Sarah Williams*
SARAH WILLIAMS
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 598-9728

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Sarah Williams*
SARAH WILLIAMS
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 598-9728
sarah.williams@usdoj.gov