**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

WILD VIRGINIA, INC.,

Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; LEE ZELDIN, in his official capacity as Administrator of U.S. Environmental Protection Agency; AMY VAN BLARCOM-LACKEY, in her official capacity as Regional Administrator for U.S. Environmental Protection Agency Region III,

Defendants.

No. 3:25-cv-01043

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................1

A. The Clean Water Act: A System of Cooperative Federalism ..................................1

B. Surface Water and Drinking Water: Different Legal Frameworks..........................3

C. Per- and Polyfluoroalkyl Substances (PFAS): Emerging Contaminant Regulation ....................................................................................................4

D. Procedural Background........................................................................................6

PLAINTIFF'S DESCRIPTION OF UNDISPUTED MATERIAL FACTS ...................................6

STANDARD OF REVIEW ....................................................................................................10

ARGUMENT ....................................................................................................11

I. Plaintiff Is Not Entitled to Summary Judgment on Count I of its Complaint Challenging EPA's July 2025 decision ....................................................................................................11

II. Plaintiff's Arguments for Summary Judgment on Count II Fail as a Matter of Law Because EPA Acted Within its Authority and Provided a Reasonable Explanation for Its Action ....................................................................................................12

A. Plaintiff misunderstands the Clean Water Act's system of cooperative federalism....................................................................................................12

B. EPA reasonably concluded that Virginia's data evaluation was consistent with the Commonwealth's reasoned assessment methodology ....................................14

C. Plaintiff misapplies Safe Drinking Water Act standards to Virginia's 303(d) list under the Clean Water Act ....................................................................................................16

III. Plaintiff Waived Its Arguments About Virginia's Assessment Methodology by Failing to Timely Comment During Virginia's Review Process ..................................................18

CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Am. Fed'n of Teachers v. Dep't of Educ.*,
796 F. Supp. 3d 66 (D. Md. 2025) ........ 10

*Am. Portland Cement All. v. EPA*,
101 F.3d 772 (D.C. Cir. 1996) ........ 15

*Barnum Timber Co. v. EPA*,
835 F. Supp. 2d 773 (N.D. Cal. 2011) ........ 13

*Chevron U.S.A., Inc. v. Hammond*,
726 F.2d 483 (9th Cir. 1984) ........ 1

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ........ 10, 15, 18

*City of Albuquerque v. Browner*,
97 F.3d 415 (10th Cir. 1996) ........ 13

*Mingo Logan Coal Co. v. EPA*,
70 F. Supp. 3d 151 (D.D.C. 2014) ........ 16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........ 11

*Nat. Res. Def. Council v. EPA*,
16 F.3d 1395 (4th Cir. 1993) ........ 13

*Nat'l Council for Adoption v. Jewell*,
156 F. Supp. 3d 727 (E.D. Va. 2015) ........ 12

*Ohio Valley Env't Coal. v. Aracoma Coal Co.*,
556 F.3d 177 (4th Cir. 2009) ........ 10, 15

*Potomac Riverkeeper, Inc. v. Wheeler*,
381 F. Supp. 3d 1 (D.D.C. 2019) ........ 13

*PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*,
511 U.S. 700 (1994) ........ 1, 2

*Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*,
605 U.S. 168 (2025) ........ 11

*United States v. LA Tucker Truck Lines, Inc*.,
344 U.S. 33 (1952) ........ 19

*West Virginia v. EPA*,
362 F.3d 861 (D.C. Cir. 2004) ........ 19

*Woodford v. Ngo*,
548 U.S. 81 (2006) ........ 19

## STATUTES

5 U.S.C. § 706(2)(A) ........ 10

33 U.S.C. § 1251(a) ........ 3

33 U.S.C. § 1251(b) ........ 1

33 U.S.C. § 1313(a) ........ 2

33 U.S.C. § 1313(c) ........ 2

33 U.S.C. § 1313(d)(1) ........ 13

33 U.S.C. § 1313(d)(1)(A) ........ 2

33 U.S.C. § 1313(d)(2) ........ 2, 13

33 U.S.C. § 1314(a) ........ 3, 5

33 U.S.C. § 1314(a)(1) ........ 3, 4

33 U.S.C. § 1315(b) ........ 6

42 U.S.C. §§ 300f *et seq*. ........ 4

Pub. L. 104–182, § 3, 110 Stat. 1614 (1996) ........ 4

## CODE OF FEDERAL REGULATIONS

40 C.F.R. § 130.3 ........ 2

40 C.F.R. § 130.7(a) ........ 18

40 C.F.R. § 130.7(b)(4) ........ 2

40 C.F.R. § 130.7(b)(5) ........ 2, 14

40 C.F.R. § 130.7(b)(6) ........ 2, 14

40 C.F.R. § 130.7(b)(6)(i) ........ 7

40 C.F.R. § 130.7(d)(1) ........ 2

40 C.F.R. § 131.11(b)(1) ........ 3

40 C.F.R. § 131.3(i) ........ 3

40 C.F.R. § 141.1 ........ 18

40 C.F.R. § 141.2 ........ 18

## FEDERAL REGISTER

89 Fed. Reg. 32532 (Apr. 26, 2024) ........ 5, 17, 18

89 Fed. Reg. 105041 (Dec. 26, 2024) ........ 5

90 Fed. Reg. 3827 (Jan. 15, 2025) ........ 5

## STATE REGULATIONS

Va. Admin. Code §§ 25-260-5 *et seq.* ........ 5

Va. Admin. Code § 25-260-10 ........ 5

Va. Admin. Code § 25-260-20 ........ 5, 17

Va. Admin. Code § 25-260-20(A) ........ 17

Va. Admin. Code §§ 25-260-390 to 540 ........ 5

## INTRODUCTION

Defendants, the United States Environmental Protection Agency and its officials (collectively, EPA), oppose Plaintiff Wild Virginia, Inc.'s motion for summary judgment. Plaintiff alleges two violations of the Administrative Procedure Act related to EPA's consideration of Virginia's 2024 list of impaired waters under the Clean Water Act, also known as the State's "Section 303(d) list." Plaintiff has not presented any valid arguments in support of its first claim, and its arguments in support of its second claim misunderstand the Clean Water Act's system of cooperative federalism, ignore Virginia's assessment methodology for the 2024 list, and misapply standards from the Safe Drinking Water Act to Virginia's 303(d) list under the Clean Water Act. These arguments show Plaintiff's confusion with the issues, and do not establish any "arbitrary and capricious" conduct by EPA. Plaintiff also failed to timely comment when Virginia was developing its methodology for assessing its waters at the appropriate point in the State administrative process and is thus barred from suggesting different approaches now. Thus, Plaintiff cannot prevail on its Administrative Procedure Act claims. The Court should deny its motion for summary judgment and instead grant summary judgment for EPA.

## BACKGROUND

### A. The Clean Water Act: A System of Cooperative Federalism

The Clean Water Act is a "complex statutory and regulatory scheme" that "establishes distinct roles for the Federal and State Governments." *PUD No. 1 of Jefferson Cnty. v. Wash. Dep't of Ecology*, 511 U.S. 700, 704 (1994). Under the Act, states and the federal government collaborate, and the states have "primary responsibility for abating pollution in their jurisdictions." *Chevron U.S.A., Inc. v. Hammond*, 726 F.2d 483, 489 (9th Cir. 1984); *see also* 33 U.S.C. § 1251(b).

Section 303 of the Act "requires each State, subject to federal approval, to institute comprehensive water quality standards establishing water quality goals for all intrastate waters." *PUD No. 1*, 511 U.S. at 704; 33 U.S.C. § 1313(a). The water quality standards "define[] the water quality goals of a water body, or portion thereof, by designating the use or uses to be made of the water and by setting criteria necessary to protect the uses." 40 C.F.R. § 130.3.

In the Clean Water Act's system of cooperative federalism, states have the primary responsibility for establishing water quality standards subject to approval by EPA. *See* 33 U.S.C. § 1313(c). Once states have established water quality standards and EPA has approved them, Section 303(d) directs States to identify and submit to the EPA a list (the "303(d) list") of waters that do not meet those standards even after implementing the Act's technology-based requirements. *Id.* § 1313(d)(1)(A). The 303(d) lists identify the pollutants that cause the violation of applicable water quality standards. *Id.*; 40 C.F.R. § 130.7(b)(4). States submit 303(d) lists to EPA biennially in every even-numbered year. 40 C.F.R. § 130.7(d)(1). EPA then "shall either approve or disapprove such identification." 33 U.S.C. § 1313(d)(2).

When determining whether to approve or disapprove a state 303(d) submission, EPA evaluates whether the state has satisfied applicable regulatory requirements, including whether the state "assemble[d] and evaluate[d] all existing and readily available water quality-related data and information," 40 C.F.R. § 130.7(b)(5), and whether the state has provided documentation supporting its decision to list or not list waters, including a description of its methodology and the data and information the state used for identification, *id.* § 130.7(b)(6); *see also Information Concerning 2024 Clean Water Act Sections 303(d), 305(b) and 314 Integrated Reporting and Listing Decisions*, EPA (March 29, 2023) (providing non-binding guidance on 303(d) lists submitted for 2024) ("EPA Guidance Memo for 2024"), EPA0005469-512.

### B. Surface Water and Drinking Water: Different Legal Frameworks

While the Clean Water Act provides for the integrity of the Nation's ambient waterbodies, 33 U.S.C. § 1251(a), a different federal statute, the Safe Drinking Water Act, governs the treatment of water processed through public water systems for human consumption. *See* 42 U.S.C. §§ 300f *et seq.* The two statutes have different regulatory regimes and considerations, reflecting their different purposes.

Water quality standards for surface waters "are provisions of State or Federal law which consist of a designated use or uses for the waters of the United States and water quality criteria for such waters based upon such uses." 40 C.F.R. § 131.3(i). A water quality standard defines the water quality goals of a water body or portion thereof, in part, by designating the use or uses to be made of the water. *See* EPA, Water Quality Standards Handbook § 2.1 (available at https://www.epa.gov/sites/default/files/2014-10/documents/handbook-chapter2.pdf [https://perma.cc/GN9R-J3NB] (last visited Oct. 9, 2026). Virginia has identified designated uses for certain waters, including fish consumption and public water supply. EPA0004225. In adopting water quality criteria to support designated uses, states may choose to adopt criteria recommended by EPA under Clean Water Act Section 304(a), 33 U.S.C. § 1314(a), EPA's recommended criteria modified to reflect site-specific conditions, or criteria developed using other scientifically defensible methods. 40 C.F.R. § 131.11(b)(1). Under Section 304 of the Clean Water Act, EPA recommends specific ambient water quality criteria for substances that are known to affect human health. 33 U.S.C. § 1314(a)(1); EPA, National Recommended Water Quality Criteria - Human Health Criteria Table, www.epa.gov/wqc/national-recommended-water-quality-criteria-human-health-criteria-table [https://perma.cc/LPY8-TMDH] (last accessed Oct 13, 2026) ("EPA Ambient Water Criteria Table"). The criteria reflect "the latest scientific

knowledge" on factors including "the kind and extent of all identifiable effects on health and welfare … which may be expected from the presence of pollutants in any body of water," "the concentration and dispersal of pollutants . . . through biological, physical, and chemical processes," and "the effects of pollutants on biological community diversity, productivity, and stability." 33 U.S.C. § 1314(a)(1).

Under the Safe Drinking Water Act, EPA regulates water provided by public water systems for human consumption. 42 U.S.C. § 300f *et seq.;* Pub. L. 104–182, § 3, 110 Stat. 1614 (1996) (congressional findings in support of the Safe Drinking Water Act noting that it is "essential for public health"). Under the Safe Drinking Water Act, EPA promulgates National Primary Drinking Water Regulations, which protect public health by limiting the levels of contaminants in drinking water. *See* EPA, National Primary Drinking Water Regulations, https://www.epa.gov/ground-water-and-drinking-water/national-primary-drinking-water-regulations [https://perma.cc/22EW-V3ES] (last accessed Oct. 19, 2026). Unlike water quality standards that apply to surface waters, these drinking water regulations "are legally enforceable primary standards and treatment techniques that apply to public water systems." *Id.* When necessary to comply with the National Primary Drinking Water Regulations, public water systems treat source water before distributing it for consumption. *Id.*

**C. Per- and Polyfluoroalkyl Substances (PFAS): Emerging Contaminant Regulation**

Per- and Polyfluoroalkyl substances (PFAS), including perfluorooctanoic acid (PFOA) and perfluorooctane sulfonate (PFOS), are a class of synthetic chemicals that do not readily break down in the environment and may have adverse human health effects. *See* Integrated Report EPA0004439-41. They are considered emerging contaminants because the science behind them continues to evolve. *Id.*

In April 2024, EPA promulgated a final regulation setting numeric levels for certain PFAS in drinking water in public water systems under the Safe Drinking Water Act. PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32532, 32536 (Apr. 26, 2024) (Final Rule). That Final Rule applies to water provided by public water systems, and not to source water. Moreover, that Final Rule requires public water systems to comply with initial monitoring requirements by April 2027 and does not require compliance with the enforceable standard, the numeric maximum contaminant levels (MCLs), for PFAS until April 2029. *Id.* at 32535.

Separately, in late December 2024, EPA published under Section 304(a) of the Clean Water Act, 33 U.S.C. § 1314(a), proposed recommended human health ambient water criteria for PFAS in surface water, *see* 89 Fed. Reg. 105041 (Dec. 26, 2024) (correction published at 90 Fed. Reg. 3827 (Jan. 15, 2025)). The Agency has not finalized that proposal and, as of the time of this filing, there are no federal recommended standards for PFAS in surface water that address criteria for PFAS. *See* EPA Ambient Water Criteria Table.

Similarly, Virginia has not established any numeric criteria for PFAS in waterbodies to address the fish consumption or public water supply uses. *See generally* Va. Admin. Code §§ 25-260-5 *et seq*. Thus, for purposes of Clean Water Act Section 303(d), the Commonwealth assesses PFAS under what is known as its general "narrative criteria," which provide that waters should be free from substances that "interfere directly or indirectly with designated uses of such water" or which are "inimical or harmful to human, animal, plant, or aquatic life." Va. Admin. Code § 25-260-20. Such designated uses include "the production of edible and marketable natural resources, e.g. fish and shellfish," *id.* § 25-260-10, and public water supply, *id.* §§ 25-260-390 to 25-260-540 (designating specific waterbodies for public water supply).

### D. Procedural Background

The Virginia Department of Environmental Quality ("Virginia") is the state agency that develops and submits the Commonwealth's 303(d) lists to EPA. Like many states, Virginia generally submits its 303(d) list to EPA as part of an "integrated report" that includes other water quality information, including information the State submits under Section 305(b) of the Clean Water Act, 33 U.S.C. § 1315(b). Virginia submitted its integrated report and 303(d) list for 2024 ("the 2024 list") on March 28, 2025. EPA0004170-488. On July 28, 2025, EPA partially approved the 2024 list, but took "no action, at this time" on certain waters in the Middle Chickahominy watershed that Virginia had not identified as impaired for PFAS. EPA0000014, 25.

On December 19, 2025, Plaintiff filed a complaint challenging EPA's decision not to act on those waters. ECF 1. On June 8, 2026, EPA fully approved the 2024 list. ECF 33; EPA0000001-13. Plaintiff amended its complaint to include two claims of arbitrary and capricious conduct under the Administrative Procedure Act: Count I challenging EPA's July 2025 decision; and Count II challenging EPA's June 2026 approval. ECF 42. Both counts described EPA's discretion under the Clean Water Act and did not mention the Safe Drinking Water Act. *Id.* EPA answered the amended complaint, and the parties cross-moved for summary judgment. *See* ECF 45 (Pl. Mot.); ECF 48 (EPA Mot.).

## PLAINTIFF'S DESCRIPTION OF UNDISPUTED MATERIAL FACTS[1]

As noted in Plaintiff's opening brief, this is a record review case in which the parties generally agree on the contents of the administrative record—the source for many of Plaintiff's

---

[1] Plaintiff provided a factual narrative instead of a list of undisputed facts, as required by Local Rule 56(B) ("Listing of Undisputed Facts"). Thus, Defendants will respond in a manner corresponding to Plaintiff's narrative rather than a list of points.

factual statements. Pl. Mem., ECF 46 at 8. However, Plaintiff has inappropriately included the PFAS National Drinking Water Regulation in its factual description. *Id.* at 11. Although the existence and content of the PFAS National Drinking Water Regulation are undisputed, it is not properly part of the record supporting EPA's decision on Virginia's list under Clean Water Act Section 303(d). *See* Admin. Record Index, ECF 44-2 (not identifying the Safe Drinking Water Act regulation).

Additionally, Plaintiff's factual narrative selectively quotes from record documents and omits the critical early steps in the administrative process at issue, including Virginia's process for developing an assessment methodology, instead jumping to Virginia's final submission in March 2025. Pl. Mem., ECF 46 at 9. As we explained in our opening brief, Virginia undertook multiple steps to develop the methodology that it applied to assess its water quality data, long before submitting its final integrated report to EPA. Specifically:

- On March 22, 2023, Virginia released its draft 2024 Water Quality Assessment Guidance Manual ("draft Assessment Methodology") for public comment, describing how Virginia would evaluate and use water quality-related information to develop the 2024 list. *See* 40 C.F.R. § 130.7(b)(6)(i); EPA0005058; *see also* EPA0005163 (recommending that Virginia establish its assessment methodology early and release it for public comment before applying the data and drafting the 2024 list). *See* EPA Mem., ECF 49 at 4-5 (Fact #3).
- Virginia's comment period for the draft Assessment Methodology lasted until April 21, 2023. EPA0005058. Plaintiff did not submit any comments. *See* EPA0004827-938. *See* EPA Mem., ECF 49 at 5 (Fact #4).
- On May 30, 2023, Virginia issued its Final 2024 Water Assessment Methodology ("final Assessment Methodology"), outlining the thresholds and methodology that it would use to

prepare the 2024 list, in the 2024 Water Quality Assessment Guidance Manual. EPA0004827-938. The final Assessment Methodology provided, among other things, that a waterbody would be identified as impaired if a Virginia Department of Health "advisory or restriction limit[ed] or prohibit[ed] consumption, based on fish tissue data." EPA0004846, 852. *See* EPA Mem., ECF 49 at 5 (Fact # 6).

Plaintiff also selectively quotes from certain portions of the administrative record. For example:

- On page 9 of its opening brief, Plaintiff states that Virginia's 2024 Integrated Report "further described action taken by the Virginia Department of Health ("VDH") to conduct a risk assessment for PFAS in the Chickahominy River and White Oak Swamp, including the release of an October 4, [sic] fish consumption advisory guideline for PFOS," ECF 46 at 9, but fails to acknowledge that, in the very next sentence, Virginia noted that the advisory guideline for PFOS was not yet effective and was not itself a fish consumption advisory: "Should the VDH PFOS Guideline become effective, any resulting fish consumption advisories will be used to assess waters in subsequent Integrated Reports." EPA0004441.
- Similarly, Plaintiff states that Virginia "recognized that EPA had published draft criteria to protect public water supplies from certain PFAS," Pl. Mem., ECF 46 at 9, but fails to acknowledge that, in the same paragraph, Virginia noted: "These [draft] criteria will not be considered for adoption in Virginia's Water Quality Standards regulation until they are finalized by EPA. Once effective they would be used to assess waters in subsequent Integrated Reports." EPA0004441.

- Further, to the extent Plaintiff implies that the Virginia Department of Health issued a fish consumption advisory for PFOS in the Chickahominy River watershed before Virginia's final 303(d) list submission in March 2025, Pl. Mem., ECF 46 at 1, that is incorrect.

Plaintiff's narrative also engages in speculation that goes beyond the record. For example, Plaintiff speculates that EPA had "justifiable and obvious concerns about approving Virginia's submission," simply because it had discussions with Virginia while it was considering the list. *See* Pl. Mem., ECF 46 at 11-12 (citing EPA0005431–33, EPA0005427, EPA0005455, EPA0005462–66, EPA0005468). But it is normal for EPA to be in communication with state regulators while it considers a submission, and these interim communications were not limited to PFAS and do not detract from EPA's ultimate decision to approve the list. *See* EPA0005431-33 & EPA0005427 (discussing issues with EPA's ATTAINS database); EPA0005422 (multiple issues); EPA0005414 (multiple issues). Moreover, communications from the Commonwealth demonstrate that it was following its methodology of identifying waters as impaired for fish consumption use after the Department of Health issued a fish consumption advisory. *See* EPA00005431-33 (email from Virginia: "We are still waiting on the extent of the PFOS advisory to complete our data upload"); EPA0005427 (email from Virginia: "[We are] still waiting on [the Department of Health] to finalize the issuance of the PFOS advisories that we need in order to finalize our 2024 [integrated report]").

Indeed, Plaintiff's brief says little about the undisputed facts supporting EPA's approval of the 2024 list, but those facts are clear from the record, and we addressed them in detail in our opening brief. In short, EPA carefully assessed Virgina's 2024 list against the regulatory criteria and considered the circumstances at length before approving Virginia's list. *See* EPA Mem., ECF

49 at 6-9 (summarizing EPA's decisions); EPA0000001-7 (June 8, 2026 approval) and EPA0000014-37 (July 29, 2025 decision).

## STANDARD OF REVIEW

Administrative Procedure Act claims are "adjudicated without a trial or discovery, on the basis of an existing administrative record, [and accordingly] are properly decided on summary judgment." *Am. Fed'n of Teachers v. Dep't of Educ.*, 796 F. Supp. 3d 66, 89 (D. Md. 2025) (citation omitted). The Court's review is limited to the full administrative record that was before the Agency at the time of its decision. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419-20 (1971). Because of the limited role of the court in reviewing the administrative record, the ordinary summary judgment procedures do not apply. *Am. Fed'n of Teachers,* 796 F. Supp. 3d at 89. Rather than deferring a disputed issue of fact to trial, the Court must resolve any disputes on the record and use summary judgment as "the mechanism by which the court decides as a matter of law whether the administrative record permitted the agency to make the decision it did." *Id.* (citations omitted).

Under the Administrative Procedure Act, agency action will be set aside only if it is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Review of agency action is "highly deferential, with a presumption in favor of finding the agency action valid." *Ohio Valley Env't Coal. v. Aracoma Coal Co.*, 556 F.3d 177, 192-93 (4th Cir. 2009) (citation omitted). The Court is not empowered to substitute its judgment for that of the Agency. *Id.* (citing *Citizens to Pres. Overton Park*, 401 U.S. at 413-14). Instead, the court considers whether the agency's decision includes "a rational connection between the facts found and the choice made," and will set aside an agency decision only when the agency's action (1) relied on factors which Congress did not intend it to consider, (2) offered

an explanation that runs counter to the evidence, or (3) reached a conclusion so implausible that it could not be ascribed to a difference of view or the product of agency expertise. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43-44 (1983) (citation omitted) (emphasizing the "narrow" scope of review). Put differently, the Court should enter judgment for the Agency as long as its action falls "within a broad zone of reasonableness." *Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 169 (2025).

## ARGUMENT

Plaintiff has no valid arguments in support of its first claim, which challenges a non-final and now moot agency decision. Plaintiff fares no better on its second claim, where its arguments merely highlight Plaintiff's misunderstandings of the law, rather than any arbitrary and capricious conduct by EPA. Moreover, Plaintiff's suggestions for other ways to assess PFAS in Virginia's waters were waived when Plaintiff failed to make those suggestions at the appropriate time in the Commonwealth's administrative process. Accordingly, the Court should deny Plaintiff's motion for summary judgment.

### I. Plaintiff Is Not Entitled to Summary Judgment on Count I of its Complaint Challenging EPA's July 2025 decision.

Plaintiff identifies Count I of its Complaint as an Administrative Procedure Act claim challenging the "July 28, 2025, Agency Action," in which EPA expressly stated it was taking no action "at this time" on water quality-related information suggesting the presence of PFOS in specified waters in the Middle Chickahominy and White Oak Swamp. ECF 42 at 22. However, Plaintiff has not identified any harm associated with that decision. Nor does Plaintiff argue that it was arbitrary and capricious for EPA not to take action at that time. *See* Pl. Mem., ECF 46. Instead, Plaintiff seeks to recast Count I as broad speculation that the Middle Chickahominy and White Oak Swamp were "*likely* not the only waters in Virginia that [allegedly] fail to meet water

quality standards because of [PFAS]" and thus EPA's July 2025 decision might be "final" for some other waters unspecified in the Complaint. *Id.* at 21 (emphasis added); *see* Am. Compl., ECF 42 ¶ 78 (a single reference to "waters outside of the Chickahominy River watershed"). Plaintiff's broad speculation regarding "likely" other waters does not satisfy basic notice pleading, let alone meet Plaintiff's burden of establishing final agency action. *See Nat'l Council for Adoption v. Jewell,* 156 F. Supp. 3d 727, 735 (E.D. Va. 2015). EPA's decision-making on the treatment of PFOS in the Middle Chickahominy and White Oak Swamp for Virginia's 2024 list was not final until June 8, 2026. *See* EPA Mem., ECF 49 at 11-12. And, even if the July 2025 decision had been "final" for some "likely" "other waters," EPA's June 8, 2026 action mooted the earlier decision. *Id*. at 12-13. The Court has jurisdiction to consider Plaintiff's substantive arguments only as they relate to Count II of the Complaint.

## II. Plaintiff's Arguments for Summary Judgment on Count II Fail as a Matter of Law Because EPA Acted Within its Authority and Provided a Reasonable Explanation for Its Action.

Plaintiff's challenges to EPA's June 8, 2026 action do not support summary judgment in its favor. Indeed, Plaintiff's arguments expose its own misunderstandings of the 303(d) list process and ask the Court to substitute its judgment for that of EPA, rather than establishing any arbitrary and capricious action by the Agency.

### A. Plaintiff misunderstands the Clean Water Act's system of cooperative federalism.

Plaintiff repeatedly argues that EPA abused its discretion by failing to substitute its own assessment method for that selected by Virginia. In doing so, Plaintiff argues, among other things, that EPA should have based its decision on Virginia's list on information unavailable to Virginia at the time it prepared the list. Pl. Mem., ECF 46 at 21. In addition, Plaintiff contends that EPA should have rejected Virgina's methodology for assessing its narrative water quality

criteria under the Clean Water Act and instead applied standards under the Safe Drinking Water Act that have not yet taken effect. *Id.* at 23-24.

Plaintiff's arguments fundamentally misunderstand EPA's role when acting on state submissions under Section 303(d)(2), 33 U.S.C. § 1313(d)(2). Although EPA evaluates whether a state's submission is consistent with the Clean Water Act and with the state's water quality standards, EPA cannot simply throw Virginia's list aside and supplant the Commonwealth's reasoned assessment simply because EPA prefers a different approach. EPA has a statutory directive to consider each state's 303(d) list submission. 33 U.S.C. § 1313(d)(2). But it is to the states—not EPA—that Congress assigned primary responsibility for identifying impaired waters in their list submissions based on their assessment of their water quality standards. *Id.* § 1313(d)(1). Thus, courts have recognized EPA's role in acting on such submissions as limited to oversight. *See, e.g.*, *Barnum Timber Co. v. EPA,* 835 F. Supp. 2d 773, 780 (N.D. Cal. 2011) (noting agreement from courts that EPA's role is limited to oversight); *cf. Nat. Res. Def. Council v. EPA*, 16 F.3d 1395,1399 (4th Cir. 1993) (addressing EPA's role with respect to state submissions under Section 303(c), 33 U.S.C. § 1313(c)); *City of Albuquerque v. Browner*, 97 F.3d 415, 425 (10th Cir. 1996) (concluding that "Congress intended the EPA to have a very limited role" under Section 303(c)). Further, EPA is entitled to rely on a state's reasoned judgment on matters such as the interpretation of state water quality standards and the need for additional data. *See Potomac Riverkeeper, Inc. v. Wheeler,* 381 F. Supp. 3d 1, 19-21 (D.D.C. 2019).

EPA performed its oversight role appropriately here by considering whether Virginia met regulatory requirements to assemble and evaluate the "existing and readily available water quality-related data and information" and to document support for its decision to list or not list

waters. *See* EPA0000001-6 (following requirements in 40 C.F.R. § 130.7(b)(5), (6)). Once EPA determined that Virginia had satisfied the requirements, its oversight role was complete. Plaintiff cannot establish that EPA's approval was arbitrary and capricious solely because EPA did not require Virginia to accept Plaintiff's suggestions for other ways that Virginia could have assessed its waters. Indeed, such a proposition contravenes the system of cooperative federalism Congress established in Section 303(d) of the Clean Water Act.

**B. EPA reasonably concluded that Virginia's data evaluation was consistent with the Commonwealth's reasoned assessment methodology.**

Plaintiff complains throughout its brief that Virginia failed to list the Middle Chickahominy and White Oak Swamp as impaired by PFAS despite "raw PFAS data [] in the hands of the experts," which it incorrectly states that EPA "did not address. . . at all," Pl. Mem., ECF 46 at 23-24. In fact, EPA repeatedly addressed the PFAS data in its decision documents. *See* EPA0000005 (discussing the PFAS data); EPA0000039 (same). Moreover, "raw data" is not a basis to list a waterbody as impaired by a pollutant. Rather, evaluation is essential to the state's process and a state's methodology describes how it evaluates the raw data to assess its waters. Thus, EPA must consider whether the state's methodology supports its decision to list or not list waters. 40 C.F.R. § 130.7(b)(6) (requiring states to include a description of methodology as documentation supporting their decisions to list or not list waters).

Here, Virginia's approach was sound. Virginia described its methodology months before releasing its draft 2024 list, including its process for assessing the narrative criteria that waters be free from substances that "interfere directly or indirectly with designated uses." EPA00004827-938 (2024 Water Quality Assessment Guidance Manual). For the designated uses of fish consumption and public water supply, Virginia stated that its assessment would be based on whether consumption advisories had been issued by the Virginia Department of Health.

EPA0004225. That was a reasonable and appropriate basis for such an assessment. *See* EPA0005531 (fish consumption advisories can constitute evidence of impairment). Virginia then consistently applied its methodology to evaluate PFAS data for the Middle Chickahominy and White Oak Swamp. *See* EPA00004170-488 (Integrated Report); EPA00005431-33 (email from Virginia: "We are still waiting on the extent of the PFOS advisory to complete our data upload"); EPA0005427 (email from Virginia: "[We are] still waiting on [the Department of Health] to finalize the issuance of the PFOS advisories that we need in order to finalize our 2024" integrated report). Yet at the time Virginia submitted its 2024 list to EPA, the Commonwealth had not yet issued a fish consumption advisory for the Middle Chickahominy and White Oak Swamp, so that information was not readily available to the State at the time of its submission.

Plaintiff ignores the application of Virginia's assessment methodology and asserts that EPA and/or Virginia "could" have used draft guidelines and proposed regulations to assess the Commonwealth's waters. Pl. Mem., ECF 46 at 12, 13, 20, 22. But the fact that an agency, when faced with a range of options, could have taken a different approach is not a basis for vacating the agency's judgment under the Administrative Procedure Act and substituting the Court's. *See, e.g.*, *Ohio Valley Env't Coal.*, 556 F.3d at 192-93 (citing *Citizens to Pres. Overton Park*, 401 U.S. at 413-14). Moreover, it is well-settled that proposed rules have no legal effect and do not represent the consummation of an agency's decision-making process. *See Am. Portland Cement All. v. EPA,* 101 F.3d 772, 777-78 (D.C. Cir. 1996) (citations omitted) (observing that regulatory proposals are still "in 'flux'" and "not intended as the last word"). Virginia accurately described those documents in its integrated report as proposals put forth at a time when "the science behind how [PFAS] act in the environment continues to evolve." EPA00004439-41. That alone is a rationale for not using the proposals to interpret the State's water quality standards for listing

determinations. Similarly, Virginia stated that it would not consider the proposed criteria for ambient water quality "until they are finalized by EPA." EPA00004441. In consideration of the circumstances identified by Virginia, it was reasonable for EPA to approve Virginia's list based on the Commonwealth's evaluation of the existing and readily available data at the time of its submission under its methodology for assessing applicable water quality standards.

Finally, Plaintiff inaccurately implies that EPA changed positions based on email communications between EPA and Virginia officials. Pl. Mem., ECF 46 at 20. But email communications do not represent a formal policy decision or action and do not represent a position or change in position by EPA. *Mingo Logan Coal Co. v. EPA*, 70 F. Supp. 3d 151, 166-67 (D.D.C. 2014), *aff'd,* 829 F.3d 710 (D.C. Cir. 2016). Indeed, far from showing that EPA's action was arbitrary, the Agency's inquiries demonstrate it carefully considered the issue before taking action.

**C. Plaintiff misapplies Safe Drinking Water Act standards to Virginia's 303(d) list under the Clean Water Act.**

While much of Plaintiff's opening brief focuses on fish consumption, *see* Pl. Mem., ECF 46 at 9-12, 18-20, 22, Plaintiff also tries to persuade the Court to substitute its judgment for EPA's and Virginia's in assessing the designated use of waters for public water supply. In so doing, Plaintiff does not even bother to discuss Virginia's methodology for assessing its public water supply designated use under its narrative criteria. Plaintiff also confuses (a) water quality standards under the Clean Water Act, which apply to surface water flowing in a natural river that may serve as a source for public water systems (assessed in Virginia for attainment of its "public water supply" designated use), and (b) numeric levels in the National Primary Drinking Water Regulations under the Safe Drinking Water Act that apply to drinking water provided by public water systems. Pl. Mem., ECF 46 at 23-24.

In support of its arguments, Plaintiff relies on the fact that Virginia designated certain waterbodies as "public water supply" under the State's water quality standards and then points generically to "the EPA drinking water standard," referencing regulations established by EPA under the Safe Drinking Water Act. *See id.* at 3-4, 22 (citing Va. Admin. Code § 25-260-20(A)). However, Plaintiff again ignores how Virginia assessed applicable water quality standards in developing its 303(d) list through its established methodology. Much like the fish consumption designated use, Virginia publicized, took comment on, and finalized a methodology for evaluating data to assess the public water supply designated use for its 303(d) list. Virginia does not have numeric water quality criteria for PFAS for the public water supply designated use, so it assesses waters for this use for PFAS consistent with the narrative criteria in its water quality standards, providing that waters be free from substances that "interfere directly or indirectly with designated uses of such water" or which are "inimical or harmful to human, animal, plant, or aquatic life." Va. Admin. Code § 25-260-20. Under the Commonwealth's methodology, Virginia considers a water to be "fully supporting" the public water supply designated use if no Department of Health "public water supply source closures were issued based on sampling data during the assessment period." EPA0004222; EPA0004850.

Without acknowledging Virginia's methodology, Plaintiff discusses EPA's PFAS National Primary Drinking Water Regulation without explaining how a regulation under the Safe Drinking Water Act is relevant to EPA's approval of Virginia's 303(d) list under the Clean Water Act. Pl. Mem., ECF 46 at 23. It is not. Plaintiff's argument confuses two different standards under two different statutes. Unlike water quality standards under the Clean Water Act, which apply to untreated surface waters, the PFAS Drinking Water Regulation under the Safe Drinking Water Act applies to "finished drinking water" from public water systems. 89 Fed.

Reg. 32532; *see also* 40 C.F.R. §§ 141.1 (EPA's drinking water regulations apply to public water systems); 141.2 (defining "maximum contaminant level" as "the maximum permissible level of a contaminant in water which is delivered to any user of a public water system"). Indeed, when it adopted the PFAS standard under the Safe Drinking Water Act, EPA specifically noted that reducing PFAS in source waters (e.g., rivers) was "beyond the scope of this rule." 89 Fed. Reg. at 32562. The drinking water regulations were plainly not applicable to surface water.

EPA acted within its authority in finding that Virginia supported its listing decision in accordance with 40 C.F.R. § 130.7(b)(6) regarding public water supplies. Plaintiff offers no argument that Virginia's reliance on consumption advisories was inappropriate for assessing the public water supply use, nor does Plaintiff assert that Virginia did not accurately apply its methodology to evaluate data. Instead, Plaintiff urges the Court to substitute its own judgment for that of Virginia and EPA with respect to how attainment of the public water supply designated use should be evaluated. Consistent with the directives of the Supreme Court, this Court should refuse that invitation. *See Citizens to Pres. Overton Park*, 401 U.S. at 413-14).

## III. Plaintiff Waived Its Arguments About Virginia's Assessment Methodology by Failing to Timely Comment During Virginia's Review Process.

EPA regulations require states to describe their process for involving the public and other stakeholders in the development of their Section 303(d) lists. 40 C.F.R. § 130.7(a). The Agency encourages States to seek public comment on their assessment methodologies early in the process. EPA0005159.

Plaintiff now argues that Virginia "could" have applied different assessment methodologies, but Plaintiff failed to avail itself of its opportunity to suggest those alternative approaches while Virginia was developing its assessment methodologies. "Simple fairness . . . requires as a general rule that courts should not topple over administrative decisions unless the

administrative body . . . has erred against objection made at the time appropriate under its practice." *United States v. LA Tucker Truck Lines, Inc*., 344 U.S. 33, 37 (1952). Timing is thus important, and a challenger to agency action must raise its concerns at the proper time in the process. *See West Virginia v. EPA*, 362 F.3d 861, 871-72 (D.C. Cir. 2004) (claims not made while EPA was considering a model were waived). A party cannot revive waived arguments by inserting them at the later stages of the process. *Id.* Instead, the process "demands compliance with an agency's deadlines and other critical procedural rules" so that the system can function effectively and through orderly proceedings. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

Consistent with EPA's recommendation, EPA0005159, Virginia's administrative proceedings followed a logical two-step process for preparing its 303(d) list and integrated report: first, Virginia developed an assessment methodology; and second, Virginia applied that methodology to the available data. EPA0005058; *see also* EPA0005163 (recommending that Virigina establish its assessment methodology early and release it for public comment before the 2024 list). The Commonwealth invited public comments separately at each step, with the time for public comment on the draft Assessment Methodology coming during the first step, *i.e.*, before April 21, 2023. EPA0005058. After it finalized its methodology in May 2023, Virginia moved on with the process and applied that assessment methodology to the data. *See* EPA0004827-938 (finalized May 30, 2023).

Plaintiff submitted no comments on the draft Assessment Methodology while Virginia was developing it. See EPA0004827-938. Instead, it waited until Virginia was applying the methodology to its draft listing determinations to suggest alternative methodologies and thresholds that "could" be applied—such as "EPA drinking water standards and numeric criteria set by other states." EPA0004120 (Plaintiff's comment submitted May 22, 2024). Thus, to the

extent that Plaintiff wished to suggest alternative methods that Virgina "could" apply "to evaluate data to assess whether there were waters that failed to meet the state narrative water quality standard," Pl. Mem., ECF 46 at 22, or different thresholds that it believed were more appropriate for assessing attainment of applicable water quality standards for PFAS, *id.,* the time to provide that feedback to Virginia was in March/April 2023. Instead, Plaintiff waited until after Virginia had not only developed the assessment methodology for the 2024 list but fully drafted the 2024 list using that methodology. See EPA0004117-25. That was too late. Having failed to provide its suggestions when Virginia was developing its methodology, Plaintiff cannot insist on a different methodology years later.

## **CONCLUSION**

Plaintiff does not make substantive arguments in support of its Count I and cannot prevail on Count II because it has failed to show that EPA abused its discretion under the Clean Water Act. To the contrary, EPA acted reasonably when it approved Virginia's list in a statutorily mandated system of cooperative federalism, finding that the Commonwealth identified waters as impaired in accordance with statutory and regulatory requirements. The Court should deny Plaintiff's motion and instead enter summary judgment for EPA on both counts in the Supplemented and Amended Complaint.

Dated: October 19, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy & Natural Resources Division

By: /s/________
SARAH WILLIAMS
DC Bar No. 1006622
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 598-9728
sarah.williams@usdoj.gov

TODD W. BLANCHE
ATTORNEY GENERAL

THEOPHANI K. STAMOS
FIRST ASSISTANT UNITED STATES ATTORNEY

By: /s/_______
Jonathan H. Hambrick
VSB No. 37590
Assistant United States Attorney
Office of the United States Attorney
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-5400
Facsimile: (804) 771-2316
Email: jay.h.hambrick@usdoj.gov

**CERTIFICATE REGARDING USE OF ARTIFICIAL INTELLIGENCE**

I hereby certify that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase and Bloomberg; and that every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

*/s/ Sarah Williams*
SARAH WILLIAMS
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 598-9728

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of October 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record.

*/s/ Sarah Williams*
SARAH WILLIAMS
Environmental Defense Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044
(202) 598-9728
sarah.williams@usdoj.gov